Joseph F. DiSTEFANO,
et al., Appellants,

v.

Peter M. STERN, et al., Appellees.

No. Civ.A. 98–30182–MAP.

United States District Court,
D. Massachusetts.

July 27, 1999.

G. Eric Brunstad, Jr., Anthony J. Smits, Hebb & Gitlin, Hartford, CT, F. Michael Joseph, Joseph, St. Clair & Cava, Springfield, MA, for appellants.

Kevin C. Giordano, Keyes & Donnellan, Springfield, MA, for Peter M. Stern, appellee.

Kerry David Strayer, Kamberg, Berman, Springfield, MA, for Eugene B. Berman, appellee.

Mark J. Albano, Dalsey, Ferrara, Townsend & Albano, Springfield, MA, for Park West Bank and Trust Company and James H. Fierberg, appellees.

Steven M. Coyle, Doherty, Wallace, Pillsbury & Murphy, Springfield, MA, for Roger A. Dialessi, appellee.

### MEMORANDUM REGARDING APPEAL OF BANKRUPTCY ORDER

PONSOR, District Judge.

### I. *INTRODUCTION*

This appeal arises out of a bankruptcy proceeding brought pursuant to Chapter 11 and, ultimately, Chapter 7 of the United States Code on behalf of J.F.D. Enterprises, Inc. ("JFD" or "Debtor"). Following the liquidation of JFD for approximately $131,000, Joseph F. DiStefano ("Mr. DiStefano") and his wife Patricia A. DiStefano ("Mrs. DiStefano") (collectively "appellants" or "the DiStefanos") brought an action against Peter M. Stern ("Stern"), Eugene B. Berman ("Berman") and Roger Dialessi ("Dialessi") (collectively "appellees").

Mr. DiStefano was an unsecured creditor of JFD and guarantor of the first security interest of Park West Bank and Trust Company ("West Bank"), and Mrs. DiStefano was a secured creditor. The appellees, respectively, were the Chapter 11 Trustee (Stern), Counsel to the Official Unsecured Creditors Committee ("Committee") (Berman) and Manager of Century Liquor Mart ("Century Liquor") (Dialessi), the primary holding of JFD. The DiStefanos sought recovery both of monies loaned by them to JFD and of monies paid by Mr. DiStefano pursuant to his guaranty to West Bank. They allege that their failure to recover these funds was the result of the appellees' mismanagement of the Debtor in bankruptcy.

The United States Bankruptcy Court for the District of Massachusetts ("Bankruptcy Court"), Boroff, J., allowed summary judgment in favor of the appellees on all claims asserted by the DiStefanos, *See In re J.F.D. Enterprises, Inc.,* 223 B.R. 610 (Bankr.D.Mass.1998), and the DiStefanos brought this appeal. For the reasons set forth below, the court will affirm the Bankruptcy Court's ruling.

### II. *FACTS*

The DiStefanos were both shareholders in JFD, and, in addition, Mr. DiStefano was its President and Treasurer, as well as General Manager of Century Liquor, the Debtor's primary asset. Century Liquor was located in a shopping plaza in West Springfield, immediately across the Memorial Bridge from downtown Springfield, a major conduit leading west from the city across the Connecticut River. According to the DiStefanos, prior to 1990, Century Liquor had been a successful business for a number of years. However, in 1990 the bridge was closed for repairs, which, according to the DiStefanos, choked off traffic flow to the plaza, thereby' causing a sharp decline in the liquor business. The bridge remained closed for several years.

Both the tax returns and financial statements of JFD for the years 1990 through 1992, following the closing of the Memorial Bridge, reflect severe financial distress. On its 1990, 1991 and 1992 federal income tax returns, JFD reported losses of $94,237, $197,823 and $111,814, totaling $403,874. Additionally, the Debtor's inventory decreased by $100,881 in 1991, while its accounts receivable increased by only $550. In 1992, its inventory decreased by $164,000 while its accounts receivable increased by only $1,159. Between 1990 and 1992, the DiStefanos loaned the Debtor in excess of $450,000 to keep the liquor business afloat. The Debtor also carried outstanding debt to West Bank totaling approximately $340,000. During this period, JFD was increasingly delinquent in payments to its wholesalers for substantial sums. In short, JFD was in serious financial trouble.

On June 10, 1993, JFD filed a Chapter 11 petition in the Bankruptcy Court. Thereafter, the Committee was appointed, and on August 9, 1993, the Bankruptcy Court allowed the Committee's application to employ as its counsel the law firm Kamberg, Berman, P.C., of which appellee Berman was a principal.

On July 30, 1993, Berman, as counsel to the Committee, Edward V. Sabella, as attorney for the Debtor, and James H. Fierberg, as attorney for West Bank, entered into a stipulation, agreeing that West Bank had an enforceable first security interest in all of JFD's personal property, cash and all proceeds thereof. Though West Bank maintained that it had a perfected security interest in JFD's liquor license, no agreement was reached on that issue. The Bankruptcy Court approved the stipulation on August 18, 1993.

On or around October 18, 1993, following a motion by Mrs. DiStefano seeking adequate protection on her loans to the Debtor, the Committee, Mrs. DiStefano and the Debtor executed another stipulation, agreeing that Mrs. DiStefano held a $40,000 secured claim in the inventory, proceeds and accounts receivable of JFD, and that her claim was subordinate to West Bank's security interest. The parties also agreed in the stipulation that if Mrs. DiStefano was paid less than $25,000 on her claim, she would have a security interest in JFD's liquor license for the difference between the payment amount and $25,000 (thereby waiving $15,000 on her claim). The Bankruptcy Court approved the stipulation on November 17, 1993.

On September 24, 1993, the Committee filed a motion to convert the case to a Chapter 7 liquidation action, alleging that the Debtor had lost a total of $475,000 between August of 1990 and May of 1993, was poorly managed and was in serious financial condition due to lack of proper business and operational controls, which continued to result in substantial losses beyond those recorded. In response to this petition, apparently in an effort to head off the Chapter 7 conversion, Mr. DiStefano agreed in October of 1993 to step down as General Manager of Century Liquor and allow Roger Dialessi to take over the position. This agreement was memorialized in a stipulation agreement executed on October 12, 1993, by Mr. DiStefano on behalf of JFD and Berman on behalf of the Committee. It was approved by the Bankruptcy Court on or around October 14, 1993.

Just prior to the filing of the October 12 stipulation, on October 13, 1993, West Bank had filed its own motion to convert the case to a Chapter 7 action, complaining that the Committee had unlawfully undertaken the management of the Debtor by ousting the legal management and placing third parties with no responsibility to West Bank in control. West Bank also claimed that JFD's inventory had shrunk significantly since the bankruptcy case was filed.

At around the same time, West Bank froze the Debtor's bank account, in which there was $40,000 from accounts receivable, and refused to grant Dialessi check-signing authority on the account. The immediate effect of this was a cash shortage. Accordingly, on October 27, 1993, JFD filed a legal action against Park West, seeking a preliminary injunction precluding it from continuing to freeze the account. This complaint was dismissed on November 3, 1993, after West Bank relented and permitted access by Dialessi to the account.

On October 29, 1993, the United States Trustee ("UST"), filed both an objection to the October 12 stipulation and a motion for the appointment of a Chapter 11 Trustee. The UST complained that Dialessi was unlawfully acting as a *de facto* Trustee.

On November 10, 1993, at the hearing on West Bank's motion to convert, two additional stipulations were executed. The Debtor, the Committee and West Bank agreed in the first stipulation that Dialessi would be appointed as the Chapter 11 Trustee, conditioned on his meeting certain qualifying requirements. In the second stipulation, they agreed that West Bank held a valid, perfected and enforceable pre-petition and post-petition security interest in JFD's liquor license. West Bank also agreed to withdraw its motion to convert and to forgo seeking conversion in the future provided that the Debtor adhered to certain conditions, including making monthly payments on West Bank's loan, providing weekly financial reports and maintaining inventory and accounts receivable at specified levels. The two stipulations were entered and approved by the Bankruptcy Court.

Ultimately, Dialessi was not appointed as the Chapter 11 Trustee, primarily as a result of the UST's disapproval. Instead, Stern was appointed to the position, which was approved by the Bankruptcy Court on December 10, 1993. Dialessi continued in his position as the General Manager of Century Liquor.

On May 31, 1994, Stern, as Trustee, filed a motion to sell the personal property of Century Liquor, including the liquor license under which it operated, for $275,-000, less a "carve out" of $20,000 to be paid to the bankruptcy estate. Because of Century Liquor's substantial delinquencies on bills to various suppliers, its liquor license was, at the time of the proposed sale, on a payment "delinquency list" pursuant to Mass.Gen.Laws ch. 138, § 25.[1] The Committee filed a limited objection to this motion, contending that the Bankruptcy Court was without jurisdiction to order or approve the sale of Century Liquor's liquor license free and clear of the delinquency list. Following a hearing regarding the proposed sale, the Bankruptcy Court, after thorough inquiry, refused to approve the sale on grounds that it would result in little or no benefit to the bankruptcy estate. *J.F.D. Enterprises, Inc.,* 223 B.R. at 617.

During his tenure as General Manager, Dialessi did several things relevant to the present appeal. First, shortly after his appointment, Dialessi commissioned RGIS Inventory Service, Inc. ("RGIS") to evaluate the Debtor's inventory levels. Though the exact figure is disputed, RGIS valued the inventory at between $208,000 and $265,000. Dialessi also discontinued the use of a computerized cash register system capable of monitoring inventory levels. He contends that such action was prompted by Mr. DiStefano's failure to record beer and wine purchases in the system, which he claims resulted in the system generating inaccurate inventory reports. Additionally, Dialessi sold some of Century

Liquor's wine inventory to another liquor store owner for approximately $2,000. Although Mr. DiStefano originally maintained at his deposition that the value of the wine sold was $25,000, cross examination revealed that this position was based on what another employee had allegedly told him. He later conceded that the value of the wine sold was approximately $4,000, which is more consistent with Dialessi's affidavit, which stated that the liquor was worth $3,200. Moreover, Dialessi failed to pay Massachusetts withholding taxes, but personally resolved all claims by the government at no expense to JFD. Lastly, Dialessi, due to JFD's cash shortage, paid employees out of an account in which proceeds from JFD's lottery ticket sales were deposited.

On August 26, 1994, Stern moved to convert the case to a Chapter 7 bankruptcy proceeding. Based on his representations that the store had been closed for over a month and that there was no reasonable likelihood of rehabilitation, the Bankruptcy Court allowed the motion. Stern was subsequently appointed as the Chapter 7 Trustee.

Thereafter, in or around September, 1994, Stern made a motion to sell the Debtor's property at public auction free and clear of encumbrances, with liens attaching to the proceeds of the sale. The Committee filed a response to the motion, again arguing that the Bankruptcy Court lacked jurisdiction to authorize the sale of Century Liquor's liquor license free and clear of its delinquency listing. The court struck the Committee's objection on the ground that the Committee had effectively dissolved upon conversion of the case to a Chapter 7 action. The court also indicated that a lien on behalf of West Bank would attach to the proceeds of any sale. The

---

1. Chapter 138 requires that wholesalers notify the Massachusetts Alcoholic Beverage Control Commission ("ABCC") of a liquor licensee whose indebtedness exceeds sixty days. When this occurs, the ABCC places the delinquent licensee on the "delinquent list." A licensee on the delinquent list may only make cash purchases of alcohol inventory. Moreover, under the statute, when a license on the delinquency list is transferred, the transferee's name is substituted for the transferor's name on the list.

liquor license was sold to the highest bidder at public auction for $100,000. The sale was confirmed by the Bankruptcy Court on December 20, 1994. The Debtor's personal property was sold for approximately $31,000.

Following the sale of JFD's assets in bankruptcy, the ABCC refused to remove the Debtor's then-transferred liquor license from the delinquency list. Accordingly, Stern, as Trustee for JFD, Park West and the purchaser of the license, Christerminator, Inc., filed motions with the Bankruptcy Court seeking an order compelling the ABCC to approve the transfer of the license free and clear of the delinquency list. The court issued such an order on June 26, 1995. *See In re J.F.D. Enterprises, Inc.,* 183 B.R. 342 (Bankr. D.Mass.1995).

The proceeds of the Chapter 7 liquidation were insufficient to satisfy much of the Debtor's outstanding debt. West Bank, since it held a first security interest for well over $300,000, received all of the proceeds of the sale, less a negotiated reduction of $25,000. The DiStefanos and the other creditors received nothing. In addition, Mr. DiStefano was subject to the claim of West Bank on his loan guaranty. This was later settled for $50,000.

### III. *PROCEDURAL HISTORY*

On February 14, 1997, the DiStefanos filed an action in Hampden County Superior Court in Massachusetts against Stern, Berman, Dialessi and West Bank and its attorney, James H. Fierberg. The case was removed to the Bankruptcy Court by counsel for Berman on March 11, 1997, as a core proceeding in the pending bankruptcy case of JFD. Thereafter, on May 14, 1997, West Bank and Mr. Fierberg were dropped from the case pursuant to an assented to motion to dismiss.

The DiStefanos alleged that each of the appellees acted negligently and in breach of fiduciary duties to the appellants by mismanaging the affairs of JFD in bankruptcy, thereby causing harm to Mr. DiStefano as a stockholder, unsecured creditor and guarantor of the West Bank loan, and to Mrs. DiStefano as a stockholder and secured creditor. According to the DiStefanos, Stern and Dialessi owed them fiduciary duties by virtue of their appointed positions in bankruptcy, and Berman, by his alleged assumption of control of JFD in bankruptcy.

The appellees moved for summary judgment on the following grounds: (1) the DiStefanos lacked standing to assert their claims; (2) the statute of limitations on their claims had expired; (3) they did not breach any duties to appellees; and (4) the targeted conduct of the appellees did not result in any harm to the DiStefanos. Additionally, Berman argued that, as counsel to the Committee, he owed no duty to the DiStefanos or to the bankruptcy estate.

The Bankruptcy Court allowed the appellees' motions as to all of the DiStefanos' claims. *See In re J.F.D. Enterprises, Inc.,* 223 B.R. 610. In doing so, the court addressed all of the appellees' arguments except the argument that the DiStefanos' claims were barred by the statute of limitations: the resolution of this issue, the court concluded, was unnecessary in view of the disposition of the case on other grounds. *See id.* at 620–31.

Specifically, Judge Boroff concluded that neither of the appellants had standing to sue. *See id.* at 620–22. Additionally, the court held that Berman did not owe any duty to the plaintiffs, but that material issues of fact existed as to whether Stern and Dialessi breached their respective duties. *See id.* at 622–28. In connection with this determination, Judge Boroff concluded that Dialessi, as manager of Century Liquor, could be held liable for any wilful or negligent conduct, and Berman, as Trustee, could only be held liable for gross negligence. *Id.* However, the Bankruptcy Court concluded that even if the appellants had had standing, and even if the appellees owed duties to the DiStefanos and breached those duties, sum-

mary judgment would still be required because no evidence existed in the record that the targeted conduct caused the DiStefanos damage. *See id.* at 630–31.

The DiStefanos have appealed the Bankruptcy Court's ruling.

## IV. DISCUSSION

### A. *Standard of Review*

■ On appeal, this court must view the Bankruptcy Court's grant of summary judgment *de novo.* *Printy v. Dean Witter Reynolds, Inc.,* 110 F.3d 853, 854 (1st Cir. 1997); *Brae Asset Fund v. Kelly,* 223 B.R. 50, 55 (D.Mass.1998). Thus, this court will uphold the Bankruptcy Court's decision if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [the appellants] are entitled to judgement as a matter of law." Fed.R.Civ.P. 56(c).

In determining whether summary judgment was appropriate the court is "obliged to view the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that parties favor." *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997). "At this stage, the nonmoving party may not rest upon mere allegation or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which he would bear the ultimate burden of proof at trial." *Id.* Additionally, "[i]t is an established rule of law that establishing a genuine issue of material fact requires more than effusive rhetoric and optimistic surmise." *Fajardo Shopping Center v. Sun Alliance Ins.,* 167 F.3d 1, 11 (1st Cir.1999). "Neither unsupported speculation, nor brash conjecture coupled with earnest hope that something concrete will materialize is sufficient to block summary judgment." *Id.; accord Euromotion Inc. v. BMW of North America, Inc.,* 136 F.3d 866, 869 (1st Cir.1998); *Vartanian v. Monsanto Co.,* 131 F.3d 264, 266 (1st Cir.1997).

### B. *Issues Raised on Appeal*

The appellants assign error to the Bankruptcy Court's determinations that (1) the DiStefanos lacked standing, (2) Berman owed no duty to the DiStefanos, (3) the conduct of the appellees did not cause any damage to the DiStefanos, and (4) the DiStefanos failed to demonstrate any genuine issue of fact.[2] Because the issue of causation is dispositive of the DiStefanos' appeal, the court need not address the other issues raised by appellants.

### C. *Causation*

Summary judgment in favor of the appellees is proper in this case if the facts, viewed in a light most favorable to the DiStefanos, fail to establish that some action or inaction on the part of the appellees proximately caused the appellants to suffer damage. *See Caputo v. Boston Edison Co.,* 924 F.2d 11, 12 (1st Cir.1991). In their attempt to survive summary judgment before the Bankruptcy Court, and now on appeal, the appellants have identified certain conduct by Stern, Dialessi and Berman during the bankruptcy proceedings, that they claim caused them financial harm. This alleged conduct is discussed below.

#### 1. *Dialessi's Conduct*

■ First, the appellants claim that soon after Dialessi was appointed General Manager of Century Liquor, customer count declined precipitously. However, the facts in this case simply do not support this bald assertion. On the contrary, the overwhelming and undisputed facts show that Century Liquor was in severe finan-

---

**2.** Contrary to the appellants' third assignment of error, Judge Boroff did not conclude that Dialessi was protected by the gross negligence standard. Instead, he held that Dialessi

"would be subject to liability for any willful or negligent acts." *See In re J.F.D. Enterprises, Inc.,* 223 B.R. at 624.

cial distress long before Dialessi became manager, suffering over $400,000 in losses between 1990 and 1992, and was surviving on loans from the DiStefanos. Indeed, the drastic decline in business, which the appellants agree was caused by the closing of the Memorial Bridge, precipitated JFD's filing of bankruptcy. Following the commencement of the bankruptcy proceeding and the appointment of Dialessi as manager, the record does not reflect any significant decline in business different from the preexisting downward spiral that ended in bankruptcy.

Second, the DiStefanos complain that Dialessi discontinued the use of the store's computerized inventory monitoring system, preventing accurate tracking of the Debtor's inventory. The appellants fail, however, to point to evidence demonstrating in any way that this action, which appears to have been taken for legitimate reasons, could have contributed to the losses suffered by the DiStefanos.

Third, the DiStefanos complain that Dialessi paid himself $150 more per week than he was entitled to under the stipulation. As correctly pointed out by the Bankruptcy Court, however, the alleged weekly overpayments to Dialessi total less than $7,000. In light of West Bank's substantially under-secured first security interest, it is inconceivable that any of this nominal amount, if in fact it was improperly paid, would have flowed to the bankruptcy estate or to the DiStefanos' secured or unsecured claims. Similarly, the appellants offer nothing but mere "optimistic surmise" and "brash conjecture" that, in the absence of such overpayments, Mr. DiStefano would have reached a more favorable settlement on his guaranty to West Bank.

Fourth, the DiStefanos contend that Mr. Dialessi sold a substantial amount of Century Liquor's premium wines at a nominal sum to another liquor store owner. Although Mr. DiStefano originally testified at his deposition that $25,000 worth of premium wine was sold in the transaction, this testimony was based on hearsay from a Century Liquor employee, who informed him that Dialessi had sold all of the "lay down" wines. The court is precluded from relying on such testimony for purposes of summary judgment. *See* Mass.R.Civ.P. 56(e) (summary judgment must be based on facts derived from "personal knowledge" and which is "admissible in evidence"). Moreover, Mr. DiStefano conceded later in his deposition that the value of the bottles sold was approximately $4,000, twice the price for which they were sold by Dialessi. This testimony is consistent with Dialessi's own affidavit, which states that the retail value of the wine sold was approximately $3,200. Like Dialessi's alleged inflated salary, it is simply incredible that the nominal amount discounted in the sale would have mitigated the DiStefanos' losses.

Fifth, the appellants object to Dialessi's failure to pay Massachusetts employee withholding taxes. However, the undisputed facts establish that Dialessi personally resolved the tax issue without any financial consequences to the Debtor or the DiStefanos.

Lastly, the DiStefanos complain that Dialessi paid payroll out of JFD's lottery ticket sales account. This action, though perhaps improper, clearly has no bearing whatsoever on the ultimate Chapter 7 liquidation amount or the DiStefanos claims.

### 2. *Stern and Berman's Conduct*

The appellants claim that Stern as Trustee and Berman as *de facto* Trustee failed to reasonably supervise and, thereby, to stop Dialessi's alleged objectionable conduct, failed to draft a Chapter 11 business plan and failed to attempt to obtain Chapter 11 financing. Appellants also contend that Stern failed to sell the store earlier in the bankruptcy proceeding, which they claim resulted in an unfavorable liquidation recovery of only $131,000— much less, they say, than what a prompter sale would have brought. Lastly, they

maintain that Berman derailed the more favorable May, 1994 proposed sale for $275,000 by filing a limited objection to the sale on behalf of the Committee.

The appellants' "failure to supervise" argument, which is dependant upon the court's determination with respect to Dialessi's conduct, obviously collapses because the court has found that Dialessi's alleged mismanagement did not cause the appellants to suffer financial harm. Moreover, the DiStefanos' claim that their damages would have been mitigated if Stern and Berman had drafted a formal business plan or sought Chapter 11 financing is based on pure speculation. There is no evidence in the record that either of these actions would ultimately have improved the position of the Debtor or the DiStefanos upon liquidation. It is also mere speculation that they could have successfully obtained financing.

The DiStefanos contention that Berman derailed the May, 1994 proposed sale by filing a limited objection is directly contradicted by the undisputed facts. The Bankruptcy Court's explicit basis for not approving the sale was that it would have resulted in little or no benefit to the bankruptcy estate. *See In re J.F.D. Enterprises, Inc.,* 223 B.R. at 617. Accordingly, even in the unlikely event that Berman's objection could be construed as a breach of an alleged duty to the DiStefanos, it did not, in fact, prevent the May, 1994 sale or, therefore, cause any damage to the appellants.

Lastly, the appellants' assertion that Stern should have sold Century Liquor earlier in the bankruptcy proceeding is unpersuasive. Again, the appellants rely only upon speculation, conjecture and surmise, this time assuming that Stern could have sold the store at an earlier date, obtained a price more favorable than the ultimate liquidation amount and thereby garnered a sufficient amount to cover the appellants' claims and/or facilitate a more favorable settlement by Mr. DiStefano on his guaranty to West Bank. The appel-

lants have simply offered no concrete evidence supporting this position. Furthermore, though related only peripherally to the issue of causation, the DiStefanos were themselves apparently opposed to an early sale and liquidation of Century Liquor and, instead, favored maintaining the store as a going concern. Indeed, Mr. DiStefano agreed to step down as manager of the store to head off initial attempts to convert the case to a Chapter 7 liquidation action.

Because there is, manifestly, *no* evidence on which a trier of fact could conclude that the conduct of either Dialessi, Stern or Berman caused damage to the DiStefanos, the Bankruptcy Court's grant of summary judgment in favor of the appellees was appropriate. As noted, it is unnecessary to address the other bases for summary judgment.

### V. *CONCLUSION*

For all of the foregoing reasons, the Bankruptcy Court's grant of the appellees' motions for summary judgment is AFFIRMED.

A separate order will issue.