**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-50205
consolidated with No. 99-50206

IN RE LEWIS SMYTH, III,

Debtor,

_____

W. PATRICK DODSON,

Appellant,

VERSUS

KEN HUFF, Trustee,

Appellee.

Appeal from the United States District Court
For the Western District of Texas

March 27, 2000

Before HIGGINBOTHAM and PARKER, Circuit Judges and JACK, District Judge[*].

ROBERT M. PARKER, Circuit Judge.

W. Patrick Dodson appeals the order of the district court affirming the bankruptcy court's Final Decree. In a consolidated action, Dodson appeals the district court's order dismissing for lack of jurisdiction his challenge to the bankruptcy court's order approving the Trustee's application to retain counsel for appeal.

_____

[*]District Judge of the Southern District of Texas, sitting by designation.

1

We affirm the district court in both matters.

## I. FACTS AND PROCEDURAL HISTORY

In August of 1991, Dodson and other creditors filed an involuntary Chapter 7 bankruptcy, later converted to a Chapter 11 reorganization, against Lewis Smyth, III, a real estate developer and investor. In November 1992, the bankruptcy court approved a reorganization plan and appointed Ken Huff trustee. With permission of the bankruptcy court, Huff, a certified public accountant, employed himself as accountant for the estate. This suit involves the question of what, if any, personal liability Huff incurred in his capacity as Trustee for damages to the estate caused by various alleged errors in the estate's tax returns.

On February 18, 1997, the Trustee filed an application for final decree seeking to close the case and a motion for final payment of his commission. Dodson objected to both motions, identifying various alleged errors in the Trustee's handling of the estate's federal income taxes. Dodson urged the bankruptcy court to deny the Trustee's request for a final decree until Huff filed amended tax returns to reclaim the estate's disputed taxes.

In June 1997, at the hearing on his objections, Dodson expanded his claims to allege additional errors in the Trustee's handling of the estate's taxes and to assert that the Trustee should be required to personally reimburse the estate for damages occasioned by his errors in preparing the tax returns. At the conclusion of the hearing, the bankruptcy court found that, while Huff had made errors in handling the taxes, those errors should be

2

balanced against concessions Huff had obtained from the IRS on other issues, with the result that the "the estate [was] probably as well off as it would have been had someone else handled it in a very meticulous fashion." Nevertheless, because of the Trustee's admitted oversight in failing to file the estate's 1994 tax return on time, the court denied his final application for commission. The bankruptcy court then entered a final decree and Dobson appealed to the district court.

In July 1997, the Trustee filed a motion seeking to retain the law firm of Jeffers & Banack, Inc. to represent him on appeal, which the bankruptcy court granted. In August 1997, Dodson objected to the appointment and requested a hearing. Dodson argued that the employment of counsel was inappropriate because it provided no benefit to the estate and because the law firm selected had a disqualifying conflict of interest. The bankruptcy court overruled the objections and reaffirmed its approval of the Trustee's counsel for appeal.

The district court, noting a split in circuit law and the absence of controlling Fifth Circuit precedent concerning the standard of care necessary to establish a trustee's personal liability for damages to a bankruptcy estate, first determined that a trustee may not be held personally liable to a bankruptcy estate for damages resulting from simple negligence. Alternatively, the district court held that, even assuming that a trustee can be held personally liable based on simple negligence, there is insufficient evidence in this record to support a finding that the Trustee was

negligent, with the exception of the penalty incurred for the Trustee's late filing of the estate's 1994 tax return. The district court noted that the Trustee had admitted this error and agreed to forego his application for final payment of commission in his capacity as Trustee, and any final fees due for his services as accountant. Those amounts would have totaled approximately $4,400, slightly less than the amount of the penalty for the late filing. Thus, the district court found that Dodson substantially prevailed on this issue in bankruptcy court. To the extent the bankruptcy court did not hold the Trustee personally liable for the difference, the district court held that it did not abuse its discretion.

Next, the district court rejected Dodson's argument that the case should be reopened and the Trustee required to file amended tax returns on behalf of the estate. Taking into consideration the fact that continued litigation of the tax issues would add administrative costs to the estate and would entail some risk of greater net tax liability, the district court affirmed the bankruptcy court's final decree that closed the case. This ruling is not challenged on appeal.

Finally, the district court found that the bankruptcy court's order approving the Trustee's application to retain appellant counsel was interlocutory, and consequently dismissed the appeal of that order for lack of jurisdiction.

## II. ANALYSIS

### A. Standard of review

4

A bankruptcy court's findings of fact are subject to the clearly erroneous standard of review and conclusions of law are reviewed *de novo*. *See Matter of Sadkin*, 36 F.3d 473, 475 (5th Cir. 1994). When the district court has affirmed the bankruptcy court's findings, this standard is strictly applied, and reversal is appropriate only when there is a firm conviction that error has been committed. *See id.*

## B. Standard of Care Required of Bankruptcy Trustee

A bankruptcy trustee is charged with the duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(1)(1994). That duty includes the filing of tax returns on behalf of the estate. *See* 11 U.S.C. § 704(8)(1994). However, the Bankruptcy Code is silent on the standard of care required of a trustee performing those duties and on what is to be done if the trustee breaches that standard of care. *See In re Hutchinson (Yadkin Valley Bank & Trust Co. v. McGee)*, 5 F.3d 750, 752 (4th Cir. 1993). The Supreme Court has held that a trustee should be "surcharged" – that is, held personally liable – for willfully and deliberately breaching his fiduciary duty of loyalty. *See Mosser v. Darrow*, 341 U.S. 267, 272-73 (1951). The *Mosser* Court did not address a trustee's personal liability with regard to negligent actions. *See id.* at 272 ("We see no room for operation of the principles of negligence in a case in which conduct has been knowingly authorized. This is not a case of a trustee betrayed by

5

those he had grounds to believe were trustworthy, for these employees did exactly what it was agreed by the trustee that they should do.").

Following *Mosser*, a circuit split developed on the question of the proper standard of care to which a trustee should be held. A number of Circuit Courts of Appeals have adopted the intentional and deliberate standard, holding that a trustee in bankruptcy should not be held personally liable unless he acts willfully and deliberately in violation of his fiduciary duties. *See, e.g., In re Chicago Pacific Corp.*, 773 F.2d 909, 915 (7th Cir. 1985); *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 461-62 (6th Cir. 1982); *Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir. 1977). On the other hand, *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1357 (9th Cir. 1983), imposes liability upon a trustee for mere negligence. Here, the district court concluded that the proper standard is gross negligence, an intermediate position articulated in the well-reasoned *In re J.F.D. Enterprises, Inc.*, 223 B.R. 610 (Bankr. D. Mass. 1998), *aff'd,* 236 B.R. 112 (Bankr. D. Mass. 1999). We agree.

In 1997, the Final Report of the National Bankruptcy Review Committee described the state of the law on the trustee standard of care question as a "crazy quilt" of decisions. *See* Nat'l Bankr. Review Comm'n Final Report § 3.3.2 at 859 (1997). The Commission observed that the difficulty arose from conflicting policy considerations; too little protection might expose a trustee to excessive personal liability and dissuade capable people from

6

becoming trustees, while too much protection would jeopardize the goal of responsible estate management. *See id.* at 860-61. The Commission ended by recommending the adoption of a gross negligence standard for Chapter 7, 12 and 13 trustees, and tying a Chapter 11 trustee to the standard of care applicable to officers and directors of a corporation in the state in which the Chapter 11 case is pending. *See id.*

In order to properly balance the opposing policy concerns identified by the Commission, we must consider the nature of a trustee's duties. The requirement that a trustee maintain disinterestedness often results in the selection of trustees who have limited historical knowledge of the debtor's business or prior understanding of the industry in which the business is operated. *See J.F.D. Enterprises, Inc.*, 223 B.R. 610, 628 (Bankr. D. Mass. 1998). In addition, the trustee must make enormously complex decisions within tight time constraints and without the assistance of -- in fact, in the face of opposition or hostility from – both secured and unsecured creditors. *See id.*

After considering the policy goals, the Commission's recommendations and the nature of the trustee's duties, we conclude that trustees should not be subjected to personal liability unless they are found to have acted with gross negligence. *See id.* Gross negligence has been defined as:

> The intentional failure to perform a manifest duty in reckless disregard of the consequences . . . . It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It amounts to indifference to present legal duty and to utter forgetfulness of legal

7

obligations so far as other persons may be affected.
Black's Law Dictionary at 1033 (6th ed. 1990). "This standard of
care strikes the proper balance between the difficulties of the
task assumed by trustees and the need to protect the interest of
creditors and other parties in the bankruptcy case." *See J.F.D.
Enterprises*, 223 B.R. at 628.

## C. Evidence of Huff's Gross Negligence

The district court held that, with the exception of the fees
incurred for late filing of tax returns, there was insufficient
evidence in the record to support a finding that the Trustee was
even negligent, much less grossly negligent. This finding was not
clearly erroneous.

### 1. N.L. River Ranch Partnership

Dodson contends that Huff had a duty to abandon to the Debtor
the estate's partnership interest in N.L. River Ranch in the Spring
of 1993 because the estate had a negative partnership capital
account balance in that asset. Dodson argues that the estate
incurred $15,000 in tax liability in 1994 because the Trustee
failed to abandon the asset. The district court noted that whether
a trustee can abandon property in order to shift tax liabilities is
subject to dispute. *See* 15 COLLIER ON BANKRUPTCY ¶ TX2.06[2](L. King
15th ed. rev. 1999). Moreover, the evidence on this question
consists solely of two statements contained in testimony by
Jennifer Rothe, a CPA who gave expert opinion testimony concerning
the estate's income tax during the hearing on Dodson's objections
to the Trustee's application for Final Decree. Specifically, Rothe

said that she *understood* that a certain adjustment to the estate's capital gain figure was due to the negative capital in N.L. River Ranch and resulted in approximately $15,000 in additional tax. However, she went on to testify that "I don't have a copy of that K-1, so I can't verify that." No other testimony or documents – not even the relevant tax returns – were introduced to support Dodson's allegations. We therefore conclude that the district court's finding that there was insufficient evidence to support this allegation was not clearly erroneous.

### 2. Failure to Deduct Payments Made to Barbara Smyth

At the time this case commenced, Barbara Smyth was the wife of Debtor, Lewis Smyth, III. Ms. Smyth agreed to relinquish any claim to the assets of the bankruptcy estate in exchange for periodic payments. A $12,000 payment to Ms. Smyth was allowed as a deduction on the estate's 1996 tax return. Dodson complains that previous payments to Ms. Smyth were not taken as deductions and the estate incurred $19,150 in taxes that could have been avoided if the Trustee had properly categorized the payments. However, the Trustee testified that he attempted to deduct the earlier payments, but that the Internal Revenue Service disallowed the deductions. Further, Rothe testified that she did not have enough information to give an opinion about the deductibility of the payments to Ms. Smyth. The district court's conclusion that the Trustee was not negligent in regard to these deductions was not error.

### 3. Penalty for Understatement and Underpayment of Taxes

Dodson alleges that the IRS assessed $1,208 in penalties against the estate for underpayment of estimated tax and $11,097.97 in penalties and interest for understating the taxes due in 1995. Both of these disputes apparently arose from the timing of the sale of the estate's interest in Bull Domingo, which was slated to close in 1995, but did not close until 1996. The record contains evidence that the estate received various interim payments, the taxability of which could not be determined until the Trustee received further documentation in 1996. The district court's finding that the penalties were not due to the Trustee's negligence, but to matters beyond his control, was not clearly erroneous.

**4. Penalties for Late Filing of Income Tax Returns**

Dodson alleges that the estate incurred penalties of $4,906.57 for filing 1993 and 1994 federal income tax returns late. At the hearing, the Trustee conceded that Dodson was correct and agreed to forego over $4,400 in Trustee and accountant fees. We agree with the district court's finding that Dodson substantially prevailed on this issue in bankruptcy court and, to the extent that the Trustee was not held liable for the difference, the bankruptcy court did not abuse its discretion. We also note that in actuality the sanction imposed against the Trustee, if subjected to close scrutiny, would in all likelihood be founded only in simple negligence. However, since the Trustee agreed to the sanction, we see no reason to disturb the status quo.

Based on the foregoing, we affirm the Final Decree.

10

## D. Order approving employment of attorneys for appeal

Orders appointing counsel under the Bankruptcy Code are interlocutory and are not generally considered final and appealable. *In re American Cabinets & Woodcrafting Corp*. (*American Cabinets & Woodcrafting Corp v. Polito Enter., Inc.*), 159 B.R. 969, 971 (M.D. Fla. 1993). Further, Dodson did not seek or receive leave of court to appeal the order. Consequently, we affirm the district court's dismissal of this consolidated appeal for lack of jurisdiction.

## III. CONCLUSION

The entry of Final Decree is AFFIRMED. The dismissal of Dodson's challenge to the bankruptcy court's approval of employment of counsel for appeal is AFFIRMED.

AFFIRMED.