**In re E.L. GARNER, INC.**

**National General Insurance Co., et al., Plaintiff,**

v.

**E.L. Garner, Inc., et al., Defendant.**

**Bankruptcy No. 87–10138. Adversary No. 90–1034.**

United States Bankruptcy Court, N.D. Mississippi.

Dec. 14, 2000.

Rodney P. Faver, Starkville, MS, H. Russell Rogers, Starkville, MS, for plaintiff.

David J. Cocke, Memphis, TN, Mary Garner, Jackson, MS, Craig M. Geno, Jackson, MS, F. Ewin Henson, III, Upshaw, Williams, Biggers, Page & Kruger, Greenwood, MS, James R. Mozingo, Jackson, MS, James W. Newman, III, Jackson, MS, Michael Stribling, Jackson, MS, for defendant.

## *OPINION*

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court are the remaining allegations set forth in the complaint filed by the plaintiff, National General Insurance Co., (NGIC), against the defendant, T. Harold Craig (Craig), former Chapter 11 trustee of the bankruptcy estate of E.L. Garner, Inc., (ELG); all issues having been appropriately joined; and the court, having heard and considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. The remaining dispute would be considered predominantly a non-core proceeding, but the parties have consented to this court entering a final order as provided in 28 U.S.C. § 157(c)(2).

### II.

In this proceeding, the plaintiff, NGIC, is suing the defendant, Craig, the former Chapter 11 trustee of the bankruptcy estate of E.L. Garner, Inc., for surety payments made by NGIC to the Mississippi State Tax Commission (MSTC), representing unpaid taxes, interest, and an insufficient funds check penalty which allegedly accrued during Craig's tenure as trustee. NGIC had previously issued its bond in favor of MSTC to insure the payment by ELG of its petroleum tax obligations. In his defense, Craig asserts that it was not his fault that the taxes owing to MSTC were not paid.

### III.

The parties stipulated to the following facts:

(a) ELG filed its Chapter 11 proceeding on January 26, 1987. The ELG bankruptcy schedules show the following taxes owing the MSTC as of 11/30/86, which were covered by the NGIC bond:

| | |
|---|---|
| Miss. Gas Taxes | $164,936.43 |
| Diesel Tax | 15,176.65 |
| Seawall Tax | 2,433.72 |
| Total | $182,546.80 |

(b) MSTC filed its proof of claim on April 8, 1987 showing pre-petition taxes for gasoline ($58,928.40), oil ($10,949.42), seawall ($2,207.75), and 11/86 gas tax ($791.51) along with other taxes. Total gasoline and oil taxes claimed by MSTC initially were $72,877.08.

(c) In March, 1987, the MSTC made demand upon NGIC under its bond to pay the pre-petition taxes owed by ELG. NGIC then notified the MSTC and ELG of cancellation or its intent to cancel ELG's bond. On June 6, 1987, the bankruptcy court approved a Settlement Agreement between NGIC and ELG which kept the petroleum tax bond in place. In the Settlement Agreement NGIC obtained the agreement of ELG to pay the pre-petition liability of $72,000+ out of post-petition earnings.

(d) Effective on or about January 16, 1988, T. Harold Craig was appointed as Chapter 11 Trustee of E.L. Garner, Inc. At the time of the Trustee's appointment ELG was already indebted to the MSTC for December sales taxes in the amount of $24,298.95 and for December petroleum taxes (i.e., gasoline, diesel and seawall) in the amount of $133,738.12. Additional liabilities for petroleum taxes were incurred and not paid in January, 1988, prior to Harold Craig's appointment and qualification as Trustee.

(e) On January 22, 1988, the United States Bankruptcy Court approved the bond and order approving T. Harold Craig as trustee.

(f) On June 28, 1989, the Bankruptcy Court entered its Order Granting Third National Bank Relief From the Automatic Stay and Preliminary Injunctive Relief.

(g) On August 9, 1989, Callen Corp. wrote a check to the MSTC for $204,727.45 for fuel taxes.

(h) On December 16, 1992, the Bankruptcy Court entered Partial Summary Judgment in the instant litigation in favor of the MSTC based upon an agreed order signed by all parties. The Judgment held in pertinent part:

- The only petroleum tax liabilities remaining due from ELG or its operation were incurred after June 29, 1989, the date Dennis/Callen took possession;

- The amount of the actual tax liabilities were $80,229.60;

- Interest and a bad check penalty of $12,914.48 and $6,654.16 respectively were also due MSTC for a total due of $99,798.24. Interest was accrued through the date NGIC finally paid the MSTC in December, 1992, or January, 1993. The bad check charge was for a check written by Callen Corporation and not by E.L. Garner, Inc.

(i) NGIC paid the MSTC $99,798.24 plus interest from and after April 30, 1992 to the actual date of payment.

(j) The following is a summary of the petroleum tax liabilities incurred in this case and the results thereof:

| | |
|---|---|
| Amount due by ELG at filing, 1/26/87 | $ 72,877.08 |
| Amount due post-petition for 12/87 | 133,738.12 |
| Minimum Total due MSTC at appt. of Trustee (1/16/88) (This does not include taxes incurred during January, 1988, prior to the trustee's appointment and qualification) | $206,615.20 |
| Amount claimed due 6/28/89 (Paid by Callen Corp. on August 9, 1989) | $204,727.45 |
| Amount of taxes ultimately paid by National General Insurance Company under its bond in favor of E.L. Garner, Inc. | $ 80,229.60 |
| Amount paid by NGIC to MSTC pursuant to Agreed Partial Summary Judgment | $ 99,798.24 |

(k) James Dennis and/or Callen Corporation were reimbursed in full for all payments made to the MSTC from assets of E.L. Garner, Inc.

## IV.

In contending that Craig is liable for the surety payments made by NGIC to MSTC, NGIC relies heavily on three orders entered by this court during the administration of the ELG bankruptcy case, to-wit:

(a) Order Concerning Operation of Business, entered January 30, 1987, which specifies that funds collected for the purpose of paying taxes should be segregated from other operating funds. (This is a standard form order entered in all Chapter 11 bankruptcy cases in this judicial district.)

(b) Order Specifying the Rights and Responsibilities of Chapter 11 Debtor–In–Possession, entered January 28, 1987. (This is a standard form order entered in all Chapter 11 bankruptcy cases in this judicial district.)

(c) Order, entered on September 1, 1989, overruling a motion filed by MSTC seeking relief from the automatic stay. (This order specifically stated that the debtor, trustee, as well as, James Dennis and Callen Corporation were ordered to comply with the previous court orders regarding the segregation of tax funds into separate accounts, as well as, were required to promptly pay tax claims as they became due.)

Orders (a) and (b) were entered prior to Craig's appointment as the Chapter 11 trustee. Order (c), which applies specifically to Craig and the others listed, makes reference to (a) and (b). These orders, however, are not conclusively dispositive of this proceeding. Other extrinsic factors must be considered by the court.

As noted in the stipulations, an order was entered on June 28, 1989, granting the motion for relief from the automatic stay which had been filed by Third National Bank. All parties involved in the proceeding, including the attorney representing Craig, consented to its entry. In conjunc-

tion with the order, James Dennis and a corporate entity controlled by him, Callen Corporation, acquired the claim of Third National Bank which was secured by most of the assets owned by ELG. Thereafter, Dennis and Callen Corporation (Dennis/Callen) assumed the day to day operations of ELG. This, in effect, eliminated most of Craig's "hands on" responsibilities and authority. Craig, however, was not relieved officially as the Chapter 11 trustee.

Shortly thereafter, MSTC filed a motion for relief from the automatic stay. Following a hearing on this motion, Dennis/Callen paid MSTC the total sum of $204,727.45, on August 9, 1989. This payment brought the MSTC claim current. As a result, the motion seeking relief from the automatic stay was overruled, as noted hereinabove, with the admonition that the debtor, trustee, and Dennis/Callen segregate the funds collected for the payment of taxes and promptly paid all taxes as they came due. Consequently, it is abundantly clear that the taxes which were not paid to MSTC, for which NGIC seeks recovery from Craig, accrued subsequent to Dennis/Callen's assumption of responsibility for ELG's operations.

Even after the entry of the order overruling MSTC's motion for relief, problems persisted with the payment of taxes. On September 12, 1989, MSTC filed a motion requesting an order requiring the segregation of tax monies. This motion asserted that Dennis/Callen was not segregating trust fund sales and petroleum tax monies, nor was fuel being purchased on a "tax paid" basis. Pursuant to this motion, an order was entered on October 3, 1989, requiring Dennis/Callen to post a surety bond in favor of MSTC in the sum of $100,000.00, or, alternatively, requiring Dennis/Callen to maintain a segregated bank account with regulated deposits of

tax funds. When this order did not correct the continuing problems, MSTC filed a motion to dismiss or convert the case on November 22, 1989. An order converting the case to Chapter 7 was entered on December 29, 1989, and Alex B. Gates was appointed as the Chapter 7 trustee.

Notably, on June 6, 1987, in a settlement agreement negotiated between NGIC and ELG, NGIC received a "super priority lien upon all of the Debtor's proceeds of sale as security for any and all post-petition taxes which National General is required to pay and does pay on behalf of the Debtor." Although it does not affect the outcome of this proceeding, NGIC never attempted to exercise this right or remedy.

### V.

The testimony is relatively uncontradicted that once Dennis/Callen assumed responsibility for the overall operations of ELG that Craig was effectively "stripped" of all authority. Although he attempted to play a part in the management of ELG, he was prevented by Dennis from doing so.

Craig's deposition, his sworn affidavit, and the deposition of Kenny Hopper, the ELG bookkeeper, are illuminating. Hopper testified unequivocally that Dennis/Callen invoiced ELG for the Mississippi petroleum taxes, and that the taxes were paid to Dennis/Callen for remittance to MSTC. Hopper indicated that when he filed ELG's tax reports with MSTC, that he reflected that ELG owed no taxes. He stated that the tax reports showed that the taxes were being paid to Dennis/Callen, the sole supplier of the fuel to ELG at that time. The court has seen no evidence that would contradict Hopper's statements. The court must, therefore, conclude that Dennis/Callen is the party who failed to remit the funds collected from ELG to MSTC.

Since all of the damages, which NGIC seeks to recover in this proceeding, accrued after Dennis/Callen assumed responsibility, the court perceives that there was little that Craig could do to prevent the non-payment of the petroleum taxes. Indeed, from ELG's perspective, Craig could have easily assumed that the taxes were being paid since they were being collected by Dennis/Callen. Certainly, the court could not impose liability against Craig for the insufficient funds check penalty which was issued by Dennis/Callen.

The facts of this proceeding present a very difficult, close decision for the court. Without doubt, after Dennis/Callen assumed responsibility for the day to day management at ELG, Craig could have come before the court seeking a definition of his responsibilities or, alternatively, relief from his duties as the Chapter 11 trustee. He was clearly aware of the previous orders of this court and, at best, was constructively on notice that funds collected for the purpose of paying taxes were to be segregated. This, of course, must be balanced against the reality that Craig, along with Kenny Hopper, thought that the petroleum taxes were being collected by Dennis/Callen for remittance to MSTC. In addition, not only was Craig's access limited at ELG, he had no way of knowing what Dennis/Callen was doing. The pertinent period of time was also not prolonged, lasting no more than five to six months. Neither party in this proceeding is a "crystal clear" winner. There are pluses and minuses on each side. However, when all of the facts are thoughtfully distilled, Craig should not shoulder the blame for Dennis/Callen's failure to remit the petroleum taxes to MSTC that it had already collected from ELG.

### VI.

Although it is not necessary for the adjudication of this proceeding, the court

would comment briefly on an alternative theory offered by Craig, i.e., that NGIC technically sustained no losses as a result of the failure to pay *post-petition* petroleum taxes. In this context, Craig points out the amount of taxes owed pre-petition, the amount of taxes owed immediately prior to his being appointed as Chapter 11 trustee, and then compares these numbers to the amount of actual taxes unpaid at the time the case was converted to Chapter 7. Craig asserts that, in actuality, NGIC has fared better because of his "stewardship," or, alternatively, that the amount owing at conversion is roughly equivalent to the *pre-petition* claim of MSTC. Even though MSTC was paid its pre-petition claim during the administration of the Chapter 11 estate, Craig's argument is more "form" than "substance." The facts are undeniably clear. When faced with the motion for relief filed by MSTC, Dennis/Callen brought the entire account current with the payment of $204,727.45. The unpaid taxes, which now constitute NGIC's claim, accrued only after this payment was made.

## VII.

The Fifth Circuit in *In re Smyth*, 207 F.3d 758 (5th Cir.2000), addressed the standard of liability that is applicable to a bankruptcy trustee, to-wit:

[W]e conclude that the trustees should not be subjected to personal liability unless they are found to have acted with gross negligence. (citation omitted) Gross negligence has been defined as:

The intentional failure to perform a manifest duty in reckless disregard for the consequences ... It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations

so far as other persons may be affected.

*In re Smyth*, 207 F.3d at 762.

See also, *In re J.F.D. Enterprises*, 223 B.R. 610 (Bankr.D.Mass.1998), and *In re Ngan Gung Restaurant*, 254 B.R. 566 (Bankr.S.D.N.Y.2000).

In resolving this matter, the court has relied heavily upon the following two factors:

(a) Although the order lifting the automatic stay pursuant to the motion filed by Third National Bank was approved by Craig's attorney, thus placing Dennis/Callen in control of ELG, Craig was effectively precluded from exercising any meaningful authority over the operations of ELG. This persisted from the date of the order, June 28, 1989, until the bankruptcy case was converted to Chapter 7 on December 29, 1989. During this period of time, Craig was not hostile to the positions of NGIC or MSTC. From the several hearings that place before this court, it was obvious that Craig was not pleased that his authority had been usurped by Dennis/Callen.

(b) The testimony of Kenny Hopper indicated that during this pertinent period of time that petroleum taxes were being paid by ELG to Dennis/Callen for remittance to MSTC.

Therefore, the court is of the opinion that the complaint, as it seeks recovery from Craig, is not well taken. The proof is insufficient to establish negligence, and certainly not gross negligence, on the part of Craig. A separate order dismissing the complaint with prejudice will be entered contemporaneously herewith.