**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 00-50842

In The Matter of:

LEWIS MILLER SMYTH, III,

Debtor;

W. PATRICK DODSON; BRUCE REPPERT; United States of America,
ex rel. OFFICIAL UNSECURED CREDITORS COMMITTEE, for the Benefit
of the Bankruptcy Estate,

Appellants,

VERSUS

KEN HUFF, Trustee; KEN HUFF, Individually,

Appellees.

Appeal from the United States District Court
for the Western District of Texas
(SA-00-CV-507)

August 7, 2001

Before SMITH, DUHÉ and WIENER, Circuit Judges.

PER CURIAM:[1]

Appellants in this case are creditors of the bankruptcy estate
of Lewis Miller Smyth, III.  They brought this adversary proceeding
against Ken Huff ("Huff") in his capacities as both trustee and
accountant to the estate.  The bankruptcy court granted summary

---

[1]Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

judgment to Huff because it determined that all of Appellants' claims were barred under the doctrine of res judicata, since they had been fully adjudicated in prior proceedings. The district court affirmed. Having reviewed the applicable law and the record in this case, we believe that both the bankruptcy and district courts were correct, and we now AFFIRM.

BACKGROUND

We summarize only the facts relevant to the issues in dispute in this appeal. Huff was appointed to serve as trustee in the Smyth bankruptcy, and with court approval, he appointed himself accountant for the trustee. In February 1997, Huff filed an application for a final decree closing the bankruptcy, as well as a motion for payment of trustee commission under 11 U.S.C. § 326.[2] W. Patrick Dodson ("Dodson"), one of the estate's creditors and an Appellant in the instant appeal, filed objections to both of Huff's motions the following March. Dodson asserted that Huff caused the estate to pay taxes, penalties and interest which were not due,

_____

[2]Section 326 states in pertinent part: "(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services . . . ."

Section 330 governs the compensation of trustees and other professionals, and states in pertinent part: "(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee [or] a professional person . . . – (A) reasonable compensation for actual, necessary services rendered . . . ."

neglected to deduct thousands of dollars in administrative expenses, and that therefore the estate had not been fully administered and should not be closed. In an evidentiary hearing held in June 1997, Dodson argued that Huff was inept and negligent in the preparation of the estate's tax returns, and that Huff had not "done the job any prudent CPA would have done in representing the estate." The bankruptcy court then ordered that the estate be closed, but it denied payment of compensation to Huff. The district court and the Fifth Circuit affirmed. See Dodson v. Huff (In re Smyth), 207 F.3d 758 (5th Cir. 2000).[3]

On April 23, 1999, Dodson and other creditors of the estate filed the present adversary proceeding against Huff. They alleged causes of action against Huff, as trustee, for lack of good faith and fair dealing, gross negligence, negligence, and breach of warranty and contract. They also alleged causes of action against Huff, as the trustee's accountant, for negligence and professional

---

[3]Apparently, the basis of Dodson's appeal of the bankruptcy court's actions was that Huff should be held to personally reimburse the estate for damages resulting from his accounting errors. In affirming the district court's rejection of Dodson's claims, we stated:

> The district court held that, with the exception of the fees incurred for late filing of tax returns [as to which Huff conceded error,] there was insufficient evidence in the record to support a finding that the Trustee was even negligent, much less grossly negligent. This finding was not clearly erroneous.

Dodson, 207 F.3d at 762. We find this description of the prior judgment very significant in our determination that Appellants' instant suit is barred by res judicata.

3

malpractice. The bankruptcy court granted Huff's motion for summary judgment on the basis that all of the claims were barred under the res judicata doctrine by its earlier orders closing the estate and denying compensation to Huff. Furthermore, the court determined that the negligence, gross negligence, and malpractice claims were barred by the Texas two-year statute of limitations. The district court affirmed. Dodson and the other creditors now appeal that ruling.

DISCUSSION

We review the grant of summary judgment de novo. Osherow v. Ernst & Young, L.L.P. (In re Intelogic Trace, Inc.), 200 F.3d 382, 386 (5th Cir. 2000). Summary judgment is proper where, considering the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

This appeal is governed by the four-pronged res judicata test that we stated in our opinion in Intelogic. Under that test, a claim is barred by a prior judgment when: (1) the parties in the prior action and the instant proceeding are identical; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) the prior judgment was a final judgment on the merits; and (4) the same cause of action is involved in both cases. Intelogic, 200 F.3d at 386. In considering the fourth prong of the test, we inquire "whether the two actions . . . are based on 'the same

4

nucleus of operative facts.'" Id. (citation omitted).[4]

Appellants dispute the district court's determination that the first and fourth factors of the <u>res judicata</u> test have been met in this case. First, they argue that the parties in the two proceedings were not identical, because in the prior proceeding: (1) Dodson was the only creditor who filed objections to Huff's motions and (2) Huff did not appear in his capacity as the trustee's accountant. We reject both contentions. Although Dodson was the only creditor who chose to file objections, all the creditors were entitled to do so. That they did not does not mean they were not parties to the bankruptcy proceeding. Moreover, although Huff filed a motion for payment of commissions due to him as trustee, and not for accountant's fees, Dodson's objections were based on the services that Huff had rendered to the estate as its accountant. Specifically, Dodson objected that Huff's improper preparation of the estate's tax returns had caused the estate to unnecessarily pay taxes, penalties and interest that were not due; that Huff had neglected to take several thousand dollars worth of deductions that would have benefitted the estate; and that Huff filed certain returns late. Huff appeared at the June 1997 hearing to answer these contentions. Therefore, we find that he was present in the prior proceeding in his capacity as the trustee's

---

[4]This standard is based on the "transactional test" of the Restatement (Second) of Judgments § 24 (1982). <u>See</u> <u>Intelogic</u>, 200 F.3d at 386 & n.3.

5

accountant.[5]

We find equally meritless Appellants' contention that the two proceedings under consideration in this case were not based on the same nucleus of operative facts. In Intelogic, the debtor made an affirmative decision not to file objections to Ernst & Young's application for accounting fees under 11 U.S.C. § 330, even though the debtor suspected that Ernst & Young's negligent accounting had caused it significant and irreversible cash flow problems. Intelogic, 200 F.3d at 384-86. When the trustee in bankruptcy later filed suit against Ernst & Young for malpractice, we held that the malpractice action and the earlier fee proceeding were based on the same nucleus of operative facts. We explained that an award of professional fees under § 330 "represents a determination of 'the nature, the extent, and the value of such services.'" Id.

---

[5]Moreover, given Huff's presence in the proceeding as trustee, our precedent does not require that he also had to be present explicitly in his capacity as accountant. See Russell v. SunAmerica Securities, Inc., 962 F.2d 1169, 1173 (5th Cir. 1992) (citations omitted):

> To satisfy the identity element, strict identity of the parties is not necessary. A non-party defendant can assert res judicata so long as it is in "privity" with the named defendant. "Privity" is recognized as a broad concept, which requires us to look to the surrounding circumstances to determine whether claim preclusion is justified.

We find, given the facts and circumstances surrounding this case, claim preclusion is more than amply justified.

at 387 (citations omitted).[6]   "By granting Ernst & Young's fee application, the bankruptcy court implied a finding of quality and value in Ernst & Young's services.  Similarly, the Trustee's claims in the present suit arise from Ernst & Young's alleged omissions in rendering the very same services considered by the bankruptcy court in the fee application hearing."  <u>Id.</u>  Therefore, the malpractice claims were barred.

In the instant case, Appellants claim that the prior proceeding had no bearing on the quality of Huff's accounting services, because Huff never applied for compensation for these services.  According to the Appellants, Dodson's objections to the improper and incomplete tax returns filed by Huff, the overpayment of taxes, and his objection that Huff should have submitted amended returns, did not encompass allegations of negligence or malpractice.  Those objections were only lodged in order to persuade the bankruptcy court not to close the estate.  They also contend that the bankruptcy court did not evaluate "the nature, the extent, and the value" of Huff's services as trustee, because his fee was based on a percentage of the disbursements he made, and because the court actually denied him compensation.

---

[6]Section 330 explicitly directs the bankruptcy court to consider certain factors in determining the amount of reasonable compensation to be awarded.  These factors include the time spent on such services, the rates charged, whether the services were necessary or beneficial, whether they were performed in a reasonable amount of time, and whether the compensation is reasonable based on the customary fee of comparably skilled practitioners.  11 U.S.C. § 330(a)(3).

Although Huff's fee as trustee may have been based on a percentage of distributions made, Appellants have not shown why the court was not required to evaluate the reasonableness of that fee under § 330. Moreover, although Huff did not seek compensation for his accounting services, the bankruptcy court expressly considered the quality of those services because they formed the basis of Dodson's objections to the closing of the bankruptcy and the payment of Huff's trustee commission. As Huff points out, and as we noted above, Dodson's written objections urged that Huff "unnecessarily paid thousands of dollars in taxes to the Internal Revenue Service for taxes which would have never been due if the Trustee's fiduciary income tax returns had been properly prepared." Moreover, Dodson tendered an expert witness at the hearing, a certified public accountant, who testified to the penalties and interest that were charged against the estate as a result of Huff's improper filings and other negligent tax practices. Indeed, the court denied Huff's motion for trustee commission under § 330 because, based on its evaluation of Huff's services, it determined that, while "Mr. Huff[] [had not] done anything to steal from the estate or [had not] committed any malpractice," "Mr. Huff could have handled [the estate's accounting] more meticulously."

Appellants' complaint in the present adversary proceeding alleged negligence and malpractice due to the very same accounting practices Dodson objected to in the prior proceeding. While it may be true that in the instant malpractice action, Appellants are

8

raising new claims, those claims are based on the same operative facts that were at issue in the bankruptcy proceeding. This clearly meets the fourth prong of our res judicata test as explained in Intelogic.[7]

In Intelogic, we stated that even if the four factors of the res judicata test are met, res judicata does not bar an action unless the plaintiff "could and should have brought [the] malpractice claims in the former proceedings." Id. at 388. In applying this standard, we must consider whether and to what extent Appellants had an "actual or imputed awareness prior to the fee hearing of a real potential for claims" against Huff, such as those asserted in the later malpractice suit. Id.[8] Second, we must ask "whether the bankruptcy court possessed procedural mechanisms that would have allowed" Appellants to assert those claims. Id.

In Intelogic, we concluded that the debtor had a "general

---

[7]We note that, even if we concluded that Appellants' claims against Huff as accountant were not based on the same nucleus of operative facts at issue in the prior proceeding, most (if not all) of their claims against him as trustee would still be barred by res judicata. That is because, as we explained in Intelogic, the bankruptcy court's consideration of a trustee's motion for commission under §§ 326 and 330 necessarily involves an evaluation of the nature, extent and value of a trustee's services. 200 F.3d at 387. By denying Huff's motion, the court implied a finding about the quality of his services as trustee, the subject that forms the basis of Appellants' present suit.

[8]We also stated that in "the context of a bankruptcy court contested matter order, . . . some level of actual or constructive awareness on the part of the party [now asserting a malpractice claim] properly carries a greater significance than it might in other contexts." Intelogic, 200 F.3d at 391 n.6.

awareness" of the potential for claims against Ernst & Young because it knew at the time of the fee hearing that some of the accountants' figures were inaccurate, yet it made a deliberate decision not to raise any objections in the fee proceeding in return for Ernst & Young's agreement to reduce its fee. We rejected the debtor's contention that, while it had knowledge of certain facts, it had not yet drawn conclusions about the significance of those facts, so it could not have had a sufficient awareness at the time of the fee proceeding. Id. at 388-89.

Appellants in the instant case assert that at the time of the prior proceeding, they "did not yet comprehend" that Huff may have been negligent or guilty of malpractice. Appellants' Brief at 22. Although Appellants devote a considerable portion of their briefs to explaining what they did not know, we must focus on what they did know at the time of the bankruptcy proceeding. Appellants complain that certain tax returns were not attached to Huff's motions for a final decree and payment, yet Dodson's objections specifically complained of IRS penalties and interest and overpayment of taxes by Huff. Obviously, Dodson must have had sufficient information to support these objections and his contention at the evidentiary hearing that the estate had suffered from Huff's "negligence and ineptitude." Moreover, Appellants' expert testified that Huff did not act as a prudent CPA. Although it is true that Appellants did not assert any malpractice claims in the prior proceeding, the key consideration is that they had a

10

"general awareness" of facts that could have supported such claims. In other words, even if Appellants had not drawn any legal conclusions that Huff's conduct amounted to negligence or malpractice (a possibility which is belied by Dodson's statements at the hearing), <u>Intelogic</u> emphasizes that we must focus on Appellants' knowledge of the relevant <u>facts</u>. <u>See also</u> <u>Howe v. Vaughan (In re Howe)</u>, 913 F.2d 1138, 1147 (5th Cir. 1990).

Appellants next contend that they did not have a reasonable opportunity to litigate their malpractice claims in the prior proceeding. This is because the bankruptcy court did not convert the proceeding into an adversary proceeding under Rule 3007 of the Federal Rules of Bankruptcy Procedure. Moreover, they contend that the court did not permit them to conduct an adequate investigation of the full extent of their possible causes of action before the evidentiary hearing.

Appellants' arguments lack merit. In <u>Intelogic</u>, we pointed out that the trustee could have objected to the fee application by Ernst & Young, and could have included a claim for affirmative relief for malpractice. <u>Id.</u> at 389-90. This action would have converted the proceeding into an adversary proceeding under Rule 3007. <u>Id.</u> at 390 & n. 4. The bankruptcy court in the instant case did not invoke Rule 3007 because Dodson and the other creditors did not assert such claims, even though they had a general awareness of facts that would have supported those claims. With respect to Appellants' discovery argument, it appears the bankruptcy court

actually postponed the evidentiary hearing on two occasions to allow additional discovery.  <u>See</u> Appellants' Brief at 5-7; Appellees' Brief at 11 n.4.  Moreover, none of the Appellants requested additional time at the June hearing to conduct further discovery or to assert affirmative claims for relief.[9]

In short, there is no genuine issue of material fact and Appellants' claims are barred as a matter of law.  The bankruptcy court did not err in granting summary judgment to Huff.  Because we have disposed of Appellants' claims on the basis of <u>res judicata</u>, we find it unnecessary to review the bankruptcy and district courts' determinations that Appellants' negligence, gross negligence, and malpractice claims were barred by the Texas two-year statute of limitations.

AFFIRMED.

---

[9]At times in their briefs, Appellants seem to admit that they had knowledge of certain problems by April 23, 1997, well before the evidentiary hearing.  At other points they claim "the problems . . . first appeared only shortly before the hearing," Appellants' Brief at 16, which still gave them an opportunity to ask the court for leave to assert affirmative claims for relief and commence further discovery.

We also note that it does not appear that Appellants ever objected in the bankruptcy court that the first prong of our <u>res judicata</u> test had not been satisfied.  Nor did Appellants object to the lack of available procedures in the bankruptcy court for the adjudication of their malpractice claims.  Instead, their written response to Huff's motion for summary judgment focused on the fourth factor of the test, as well as their lack of awareness of the potential for legal claims.  Therefore, Appellants may well have waived their other arguments.

12