# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 6, 2010

Lyle W. Cayce
Clerk

No. 09-50544

In the Matter of:  TEXAS PIG STANDS, INC.

Debtor

_____

TEXAS COMPTROLLER OF PUBLIC ACCOUNTS

Appellee

v.

VINCENT J. LIUZZA, JR., Trustee of Texas Pig Stands, Inc.

Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and BENAVIDES and PRADO, Circuit Judges.

EDITH H. JONES, Chief Judge:

Vincent J. Liuzza, Jr. served as the bankruptcy trustee for Texas Pig Stands, a venerable San Antonio, Texas, restaurant company.  In an attempt to keep the restaurants afloat after a plan of reorganization had been confirmed, Liuzza failed to remit state sales taxes to the Texas Comptroller.  The issue posed in this appeal is whether Liuzza may be held personally liable for the deficiency.  TEX. TAX. CODE ANN. § 111.016(b) (Vernon 2007).  The bankruptcy court found that Liuzza could not be held liable absent a showing of "gross

negligence." The district court disagreed. We affirm the district court's judgment imposing liability.

## I. Background

Pig Stands, home of the legendary "pig sandwich,"[1] owned several restaurants throughout Texas. In April 2005, Pig Stands filed for Chapter 11 bankruptcy and continued to face serious cash flow problems. While the debtor-in-possession ran the estate, Pig Stands failed to remit state sales taxes for October and November 2005.[2] On March 14, 2006, the court appointed Liuzza as trustee. As part of the appointment, the bankruptcy court's order ("March Order") explicitly required Liuzza to remit state sales taxes as they became due.

Liuzza believed the best way to maximize the estate's value was to sell the restaurants as going concerns instead of liquidating their assets piecemeal. Bidders would be far more interested in open restaurants, even unprofitable ones, than in liquidation sales. Accordingly, Liuzza attempted to keep the restaurants in business to attract bidders. Insufficient cash flow made this difficult, so Liuzza again fell behind in remitting sales taxes. When the Comptroller moved to convert the bankruptcy to Chapter 7, however, the bankruptcy court denied the motion. In June 2006, Liuzza remitted the taxes for April and May 2006, and payments stayed timely until September.

On September 13, 2006, the bankruptcy court approved a reorganization plan (the "Plan"), which provided for orderly sales of the restaurants as going concerns and distribution of the proceeds to the creditors. The Plan created a liquidation trust (the "Trust Agreement") and appointed Liuzza trustee. In

---

[1] *See Texas Pig Stands, Inc. v. Hardrock Café Int'l*, 951 F.2d 684 (5th Cir. 1992).

[2] Pig Stands collected tax from customers for each sale. Under Texas law, those collected sales taxes are held in trust until remitted to the Texas Comptroller. TEX. TAX CODE ANN. § 111.016 (Vernon 2007). These"trust-fund taxes" must be remitted timely to the state.

language similar to that of the March Order, the Plan required Pig Stands to stay current and timely remit state sales taxes held in trust. Specifically, Section 5.02 of the Plan provided that "the Trustee shall remain current with all post-confirmation expenses of the Debtor." An addendum to Section 8.06 included "default language" on behalf of the State of Texas:

> (a) A failure by the Trustee to remain current on its postconfirmation Texas sales . . . taxes or to make a payment to the Texas Comptroller . . . pursuant to the terms of the Plan shall be an Event of Default. If the reorganized Debtor fails to cure an Event of Default as to tax payments . . . the taxing entity issuing the notice of default may (a) enforce the entire amount of all of its claims, (b) exercise any and all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.

In the order confirming the Plan, a new provision specified that:

> The [Texas] administrative claim for October and November 2005 sales taxes and all accrued penalty and interest thereon will be paid on the Effective Date [October 13, 2006]. Any additional administrative expense tax claims owed to the Texas Comptroller will also be paid on the Effective Date.

Liuzza paid only a small portion of the taxes that became due on the Effective Date. This default, he asserts, resulted from the unexpected inability to consummate a post-confirmation loan. On October 25, more than a month after Liuzza defaulted in paying the August 2006 taxes and twelve days after the Effective Date defaults, the Comptroller issued notices of deficiency. On November 8, the Comptroller froze the company bank accounts and collected money directly from restaurant cash registers. A week later, the Comptroller revoked Pig Stands' license to collect sales taxes, effectively ending the company's ability to function. The bankruptcy case was eventually converted to Chapter 7.

The Comptroller then filed an adversary proceeding to impose personal liability on Liuzza for the sales tax deficiency under TEX. TAX CODE ANN.

§ 111.016(b) (Vernon 2007).[3] The bankruptcy court denied liability, finding that the Trust Agreement limited Liuzza's liability to "gross negligence." The district court reversed, holding that under the Trust Agreement, Liuzza remained liable for and had committed willful misconduct in failing to pay trust fund taxes. The district court entered judgment against Liuzza and he has appealed.

## II. Discussion

This court reviews the decision of a district court, sitting as an appellate court in bankruptcy, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law. *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001). Generally, a bankruptcy court's findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo*. *In re Williams*, 337 F.3d 504, 508 (5th Cir. 2003).[4]

Liuzza raises myriad challenges to a judgment that will cost him more than a hundred thousand dollars. He denies that he violated applicable state tax law. He relies upon exculpatory provisions in the Trust Agreement that accompanied the Plan. He asserts that the mere "deferral" of tax payments was implicitly or explicitly authorized under bankruptcy law, which allegedly supersedes state tax law in this respect.

---

[3] TEX. TAX CODE ANN. § 111.016(b)(Vernon 2007) states:
With respect to tax or other money subject to the provisions of Subsection (a), an individual who controls or supervises the collection of tax or money from another person, or an individual who controls or supervises the accounting for and paying over of the tax or money, and *who willfully fails to pay or cause to be paid the tax or money is liable as a responsible individual for an amount equal to the tax or money not paid or caused to be paid.* The liability imposed by this subsection is in addition to any other penalty provided by law. The dissolution of a corporation, association, limited liability company, or partnership does not affect a responsible individual's liability under this subsection.
(emphasis added).

[4] Because Liuzza is proceeding *pro se*, we interpret his brief liberally to afford all reasonable inferences which can be drawn from them. *See Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2000).

Because Liuzza appears *pro se* and because a tax collector's imposition of personal liability on a bankruptcy trustee is an unusual, if not wholly unprecedented occurrence,[5] we have carefully reviewed the record before deciding to affirm the district court. We are also cognizant that although Liuzza transgressed Texas tax law, he did not enrich himself from Pig Stands' estate. We address his interrelated arguments in an orderly fashion.

## A.

As noted above, Texas Tax Code Section 111.016(b), imposes personal liability on a controlling person for any tax deficiency if that person "willfully" fails to remit sales taxes held in trust. Liuzza was a controlling party. He initially asserts that a trustee can be held liable only for gross negligence or willful or wanton misconduct, and that the trustee's standard is a different — and higher — standard than is imposed under state tax law.

*State v. Crawford* explains when a party is liable under § 111.016. 262 S.W.3d 532 (Tex. App.–Austin 2008, no pet.). *Crawford* noted that § 111.016(b) was modeled after Section 6672 of the Internal Revenue Code, 26 U.S.C. § 6672, and adopted the federal statute's construction of the term "willfully". *Id.* at 538-39. Citing cases analyzing Section 6672, the court held that "willfully not paying taxes" is established "by evidence that the responsible person had knowledge that taxes were due . . . and yet paid other creditors." *Id.* at 538 (citing *Barnett v. I.R.S.*, 988 F.2d 1449, 1457 (5th Cir. 1993)). "Willfulness . . . requires only a voluntary, conscious, and intentional act, not a bad motive or evil intent." *Barnett*, 988 F.2d at 1458. Liuzza admits that he knew that the sales taxes were due and used the money to pay other creditors

---

[5] *See e.g. King v. United States*, 85 S. Ct. 427 (1964); *In re Dolard*, 519 F.2d 282 (9th Cir. 1975); *United States v. Kaplan*, 74 F.2d 664 (2d Cir. 1935). Some modern cases discuss that a trustee might be liable for failing to pay withholding taxes. *See e.g. In re San Juan Hotel Corp.*, 847 F.2d 931, 947 (1st Cir. 1988); *In re Equipment Fabricators*, No. 91-16748, 1993 WL 83498, *1 (9th Cir. Mar. 23, 1993); *In re Thurman*, 163 B.R. 95, 100 n.6 (Bankr. W.D. Tex. 1994).

(suppliers, staff, etc.). Accordingly, absent special protection of some sort, he is exposed to liability under § 111.016(b). Liuzza has not identified, and we have not found, any different definition of willfulness that pertains to bankruptcy trustees.

Liuzza believes that his duty as a trustee to "maximize the estate's value" superseded his duty to pay the taxes timely and should absolve him of liability. Essentially, Liuzza argues his "good intentions" of maximizing the estate's value preclude liability. Good intentions are irrelevant: a party is liable for willfully failing to remit trust-fund taxes irrespective of *why* he failed to do so. *Crawford*, 262 S.W.3d at 544 ("Willfulness does not require a bad motive or evil intent, but rather a 'voluntary, conscious, and intentional act.'") (quoting *Barnett*, 988 F.2d at 1457). In the analogous federal tax statute, 26 U.S.C. § 6672(a), good intentions are not exculpatory. *See, e.g., High v. United States*, 506 F.2d 755, 756 (5th Cir. 1975); *Collins v. United States*, 848 F.2d 740, 741-42 (6th Cir. 1988) ("It is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern — the government cannot be made an unwilling partner in a floundering business.").

Moreover, a trustee's failure to pay taxes is not judged by a gross negligence standard. Liuzza mistakenly relies on a case that discusses the standard of care owed by a trustee to the estate when he acts as its agent. *See In re Smyth*, 207 F.3d 758, 761 (5th Cir. 2000). That a trustee is only liable to the estate for acts of gross negligence, *Id.* at 761-62, has nothing to do with a statutory duty to the state to pay taxes held in trust. Liuzza is comparing apples to oranges.

Although the Bankruptcy Code does not discuss trustee liability, federal law directly incorporates state law when a bankruptcy trustee manages property and expressly requires the timely payment of taxes. *See* 28 U.S.C. §§ 959(b), 960. Section 959(b) requires a trustee to operate the property "according to the

requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." Section 960(a) states that a trustee "shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation." Finally, Section 959(a) authorizes suits against trustees "with respect to any of their acts or transactions in carrying on business connected with such property." Taken together, these provisions do not expressly address trustees' personal liability, but in confirming trustees' responsibility to "comply with tax laws," they are fully consistent with holding trustees personally responsible for their professional conduct to the same extent as any other actors under the law.

Further, the United States' published materials for bankruptcy trustees warns trustees of their responsibilities to remit taxes. The United States Trustee Manual states:

> Failure to remit taxes is also a breach of the debtor's statutory obligations and fiduciary duties. See 11 U.S.C. [§ 346(h)]; 28 U.S.C. §§ 959 and 960. A debtor is presumed to be aware of the withholding requirements of federal and state law. See In re WPAS, Inc., 6 B.R. 40, 44 (Bankr. M.D. Fla. 1980).[6]

Similarly, the U.S. Trustee's Chapter 11 Trustee Handbook specifically informs trustees of the risk of not paying taxes:

> The trustee must file appropriate returns and pay tax liabilities on behalf of the estate. *A trustee who fails to comply with the federal withholding tax provisions runs the risk of being held personally liable for the trust fund taxes not collected and paid over to the government.* Similarly, the trustee may be held personally liable when an estate does not have sufficient funds to pay the taxes due from the sale of estate assets.

---

[6] U.S. DEP'T. OF JUSTICE, U.S. TRUSTEE MANUAL, CHAPTER 11 CASE ADMINISTRATION 3-9.4.5 (October 1998) available at http://www.justice.gov/ust/eo/ust_org/ustp_manual/vol3toc.htm.

(emphasis added).[7]  While the provision discusses federal withholding taxes, it certainly puts the reader on notice that he is responsible for remitting trust-fund taxes in a timely manner.  The Chapter 11 Trustee Handbook also refers to § 959.  Liuzza testified to reading the handbook and should have been aware of its warnings.

**B.**

Liuzza next asserts that the Trust Agreement limits his liability.  The Comptroller is bound to any liability limitations imposed by the Plan, which included the Trust Agreement.  11 U.S.C. § 1141(a).  The Plan and Trust Agreement are contracts that must be read in their entirety to be given full meaning.  *In re Texas Commercial Energy,* 607 F.3d 153, 158 (5th Cir. 2010); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 235 (Tex. 2003) ("Contracts are to be read as a whole, and an interpretation that gives effect to every part of the agreement is favored so that no provision is rendered meaningless or as surplusage.").  Further, under the governing law of Texas, "exculpatory clauses are strictly construed, and the trustee is relieved of liability only to the extent to which it is clearly provided that he shall be excused."  *Jewett v. Capital Nat. Bank*, 618 S.W.2d 109, 112 (Tex. Civ. App.– Waco 1981, writ ref'd n.r.e.)

Liuzza relies on Sections 3.13 and 5.4 of the Trust Agreement to limit his liability.  Under Section 3.13, the trust will indemnify the trustee "from all loss, liability, expense (including counsel fees) or damages which he or they may incur or sustain in good faith and without fraud, willful misconduct, or negligence in the exercise and performance of his or their powers[.]"  This provision is inapposite.  This is not an indemnification case, and Liuzza is ineligible for indemnification because he committed willful misconduct by willfully failing to

---

[7] U.S. DEP'T. OF JUSTICE, CHAPTER 11 TRUSTEE HANDBOOK 52 (May 2004) available at http://www.justice.gov/ust/eo/private_trustee/library/chapter11/docs/Ch11Handbook-200405.pdf.

pay taxes.[8] Section 3.13 also provides that "The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no person shall look to the Trustee for payment of any such expense of liability." This provision also does not shield Liuzza from liability. Section 111.016(b) is not shifting a liability from the trust to Liuzza, but imposing a personal liability onto Liuzza for failing to remit taxes as a controlling person of the trust.

Of more interest, Section 5.4 states that individual creditors cannot pursue the trustee to satisfy the trust's liabilities:

> No Personal Obligation for Trust Liabilities. Persons dealing with the Trustee in matters relating to the Trustee have recourse only against the Trust Assets to satisfy any liability incurred by the Trustee to such person in carrying out the terms of this Agreement or the Plan, and *the Trustee shall have no personal or individual obligation to satisfy such liability. . . .*

(emphasis added). Nevertheless, Section 5.4 does not protect him from liability.

Section 5.1 explains more precisely when the trustee faces liability:

> Standard of Care. *Except in the case of fraud, willful misconduct or gross negligence,* the Trustee shall not be liable for any loss or damage by reason of any action taken or omitted by him *pursuant to the discretion, power and authority conferred on him by this Agreement or the Plan.*

(emphasis added). Read in conjunction with Section 5.1, Section 5.4 absolves the trustee from any personal liability if he follows the Plan and does not commit fraud or willful misconduct. Liuzza exceeded his authority, violated the Plan, and committed willful misconduct. Accordingly, the Trust Agreement does not limit his liability.

---

[8] Liuzza argues that he did not commit "misconduct." However, even by his own definition, he committed misconduct. Liuzza uses BLACK LAW DICTIONARY's definition: "A dereliction of duty; unlawful or improper behavior." As discussed previously, Liuzza's behavior was unlawful.

Liuzza emphatically disagrees that the mere "deferral" of tax payments while he awaited an opportune sale of the restaurants should amount to "willful misconduct." But the Plan plainly required timely payment of these taxes, and the Trust Agreement forbade him to "attempt to modify the plan" (Section 4.3). Nonetheless, he was authorized to seek alterations to the Trust Agreement on written submission to and approval of the bankruptcy court (Section 11.1). Liuzza paid no heed to these strictures, nor did he avail himself of recourse to the bankruptcy court before unabashedly defaulting on the taxes.

Another source of fundamental misunderstanding by Liuzza is that, acting for the estate, he could pick and choose when to pay taxes as opposed to other priority claims. First, the timing of tax payments was determined by the Plan, a court order binding on Liuzza. Second, because state sales taxes are held in trust by an entity until paid to the Comptroller, they became property of the debtor's estate, and then of the reorganized debtor, only to the extent of legal title, *In re Al Copeland Enterprises, Inc.*, 991 F.2d 233, 235 (5th Cir. 1993), thus limiting Liuzza's ability freely to dispose of those sums. Third, cases determining by what priority scheme administrative creditors may divide up the debtor's assets in a liquidation, *see e.g. United States v. Randall* 401 U.S. 513, 91 S. Ct. 991 (1971) *superseded by statute,* Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, Stat. 2549*, as recognized in Begier v. IRS*, 496 U.S. 53, 110 S. Ct. 2258 (1990), are irrelevant to determining the liability of non-debtor parties, like Liuzza, for priority taxes.

## C.

Finally, Liuzza raises the defenses of *in pari delicto* and reliance on advice of counsel. As he failed to raise these issues in the courts below, we do not consider them here. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (en banc).

No. 09-50544

## III. Conclusion

The Comptroller's motions to strike Liuzza's brief and assess sanctions are denied. For the reasons discussed above, the district court's judgment is AFFIRMED; MOTIONS DENIED.