REVISED JULY 2, 2008

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 6, 2008

Charles R. Fulbruge III
Clerk

No. 07-30693

LAWRENCE E ELSENSOHN, JR

Plaintiff - Appellant

v.

ST TAMMANY PARISH SHERIFF'S OFFICE; RODNEY J STRAIN, JR, St Tammany Parish Sheriff and Ex Officio Tax Collector; MARLIN PEACHEY, In his capacity as Warden of St Tammany Parish Jail

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans

Before KING, WIENER, and ELROD, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Lawrence Elsensohn, Jr. appeals the dismissal of his claim against defendants-appellees St. Tammany Parish Sheriff's Office, Rodney J. Strain, Jr., in his official capacity as Sheriff and Ex Officio Tax Collector of the Parish of St. Tammany, and Marlin Peachey, in his official capacity as Warden of St. Tammany Parish Jail (collectively, "Defendants"), for their alleged interference with, restraint, and denial of his rights under the Family Medical Leave Act. Because we conclude that Elsensohn failed to state a claim for which relief can be granted, we affirm.

## I. BACKGROUND

Elsensohn is employed as an officer by the St. Tammany Parish Sheriff's Office.[1] He was hired in or around August of 1996 and eventually rose to the position of sergeant. Elsensohn's wife, Wendelle Elsensohn, was also once employed by the St. Tammany Parish Sheriff's Office. At some point, however, Mrs. Elsensohn brought a complaint under the Family Medical Leave Act ("FMLA") against Defendants and, sometime thereafter, left the St. Tammany Parish Sheriff's Office.

According to Elsensohn's complaint, "[a]t all times, [Elsensohn] attempted to not involve himself in his wife's FMLA claim except to give her moral support." Accordingly, he continued to perform his job in a professional manner. Of course, "[b]oth [Elsensohn] and Defendants knew that if the matter went to trial, [Elsensohn] would be called as a witness due to the fact that he was familiar with the circumstances surrounding his wife's claim as they worked in the same department."

In or around October 2004, Mrs. Elsensohn settled her FMLA claim against Defendants. But in early 2005, in retaliation for his wife's lawsuit, Elsensohn was harassed by Warden Peachey. Elsensohn reported the harassment to Internal Affairs in early 2005, and, after an investigation, he was assured that he would have no more problems. Indeed, during this time, Elsensohn received excellent job reviews, and he reasonably expected to be promoted. Thus, beginning in January of 2006, Elsensohn sought to advance his career by applying for several different promotions.

Elsensohn alleges that despite his excellent job performance and the fact that he was the most qualified applicant for the positions, he was denied every

---

[1] The facts, as set forth herein, are taken from Elsensohn's complaint and accepted as true for purposes of this opinion only.

promotion for which he applied. In or around February or March of 2006, Elsensohn spoke to his supervisor, Deputy Warden Captain Greg Longino, who informed Elsensohn that he would not receive a promotion of any kind. During a subsequent meeting with Sheriff Strain and Warden Peachey, Elsensohn asked what he needed to do to put himself in a better position for a promotion. In response, he was told "nothing," and further discussions were "closed off."

Shortly after the meeting, Elsensohn was involuntarily placed on a less favorable night shift. As a result, Elsensohn lost his holiday and overtime pay, his ability to work details was reduced, and he was unable to seek secondary and supplemental employment.

On December 28, 2006, Elsensohn filed a two-count complaint against Defendants.[2] Elsensohn first alleged that "Defendants' actions have resulted in the interference with, restraint, and denial of [his] rights under the FMLA. Further, Defendants' actions were taken with discriminatory and retaliatory intent against [Elsensohn] as a result of [his] association with . . . his wife, who had opposed Defendants' unlawful practices related to the FMLA." Second, Elsensohn alleged that he suffered mental anguish and emotional distress as a result of Defendants' tortious conduct. Elsensohn sought compensation for lost earnings, liquidated damages, compensatory damages, punitive damages, and attorneys' fees and costs.

On February 12, 2007, Defendants moved to dismiss the action in its entirety. Defendants argued that the FMLA action was a putative derivative claim based on both Mrs. Elsensohn's direct FMLA claim and Elsensohn's spousal relationship. Defendants asserted, however, that neither the language of the FMLA itself nor the corresponding regulations permit spouses to bring

---

[2] Elsensohn also sued the Parish of St. Tammany (the "Parish"). However, the district court dismissed the Parish after determining that the Parish had no governing authority or control over either the St. Tammany Parish Sheriff's Office or its officers. Elsensohn does not appeal this holding.

derivative claims. Alternatively, Defendants argued that Elsensohn's claim could not be brought because Elsensohn neither was "about to testify" in support of Mrs. Elsensohn's claim nor "had testified" in support of Mrs. Elsensohn's claim. Finally, Defendants argued that because the sole basis for federal jurisdiction was an untenable FMLA claim, the state-law claim should be transferred to an appropriate state court.

In response, Elsensohn asserted that he was bringing his own direct retaliation claim. Elsensohn stressed that it was not his familial relationship that served as the basis for his claim, but the fact that Defendants knew that if Mrs. Elsensohn's FMLA lawsuit went to trial, Elsensohn intended to testify on her behalf. Elsensohn also contended that he was protected under 29 U.S.C. § 2615(b)(2)-(3) as "an individual who 'ha[d] given, or [was] about to give, any information in connection with any inquiry or proceeding . . . ; or (2) ha[d] testified, or [was] about to testify, in any inquiry or proceeding . . . ." (emphasis in original). Furthermore, Elsensohn argued that the corresponding regulations made it clear that he could bring his own claim because they explicitly stated that "individuals," and not merely employees, are protected from retaliation. Finally, Elsensohn asserted that several courts have recognized that spouses who are co-employees may bring retaliation claims under other anti-discrimination statutes, such as Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (the "ADEA").

On June 18, 2007, the district court dismissed Elsensohn's complaint. The district court determined that Elsensohn's FMLA action did not fall within the terms of § 2615(b) because Elsensohn did not allege that he filed any charge, gave any information, or testified in any proceeding related to his wife's FMLA case. To the contrary, the district court noted that Elsensohn alleged that "[a]t all times[] [he] attempted to not involve himself in his wife's FMLA claim except to give her moral support." The court held that Elsensohn's potential

4

participation in his wife's case was not enough to create standing because Defendants' alleged retaliatory acts occurred after the case settled. While the district court considered the conflicting case law concerning the viability of third-party retaliation claims under Title VII and the ADEA, it ultimately concluded that the anti-retaliation provision of the FMLA was narrower and did not create a general cause of action for spouses. Finally, because the district court found that Elsensohn's federal action was not sustainable, it dismissed Elsensohn's state-law claim for emotional distress without prejudice.

On July 17, 2007, Elsensohn filed this timely appeal.[3]

## II. STANDARD OF REVIEW

We review the grant of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure de novo. Kennedy v. Chase Manhattan Bank USA, NA, 369 F.3d 833, 839 (5th Cir. 2004) (citations omitted). We must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. See Lovick v. Ritemoney, Ltd., 378 F.3d 433, 437 (5th Cir. 2004) (citation omitted). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, – U.S. – , 127 S. Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (quotation marks, citations, and footnote omitted); see also In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 n.10 (5th Cir. 2007) (citation omitted) (stating that we no longer apply the minimal standard of adequate pleading set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

---

[3] Elsensohn does not address the dismissal of his state-law claim on appeal. The issue is, therefore, abandoned. See Geiger v. Jowers, 404 F.3d 371, 373 n.6 (5th Cir. 2005) (citations omitted).

## III. DISCUSSION

The FMLA was enacted to permit employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition. 29 U.S.C. § 2601(b)(2). "The FMLA has two distinct sets of provisions, which together seek to meet the needs of families and employees and to accommodate the legitimate interests of employers." Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 763 (5th Cir. 2001) (citing Nero v. Indus. Molding Corp., 167 F.3d 921, 927 (5th Cir. 1999); Bocalbos v. Nat'l W. Life Ins. Co., 162 F.3d 379, 383 (5th Cir. 1998)). The provisions in the first set are prescriptive: they create a series of substantive rights, namely, the right to take up to twelve weeks of unpaid leave under certain circumstances. Id. (citations omitted). The provisions in the second set are proscriptive: they bar employers from penalizing employees and other individuals for exercising their rights. Id. (citing 29 U.S.C. § 2615(a)(1)-(2); Chaffin v. John H. Carter Co., 179 F.3d 316, 319 (5th Cir. 1999)); see also Bocalbos, 162 F.3d at 383 ("[T]he Act protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights." (citations omitted)); Faris v. Williams WPC-I, Inc., 332 F.3d 316, 320-22 (5th Cir. 2003) (holding that there is a distinction between substantive FMLA rights and causes of action for retaliation designed to protect those rights).

Ordinarily, cases seeking to enforce proscriptive rights are brought by the employees who were discriminated against under § 2615(a)(2). See Haley v. Alliance Compressor LLC, 391 F.3d 644, 649 (5th Cir. 2004). Section 2615(a)(2) makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." § 2615(a)(2). To make a prima facie case for retaliation under § 2615(a)(2), a plaintiff must show that: "[he] was protected under the FMLA; (2) [he] suffered an adverse employment decision; and either (3a) that [he] was

treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because [he] took FMLA leave." Hunt, 277 F.3d at 768 (citation omitted); see also Mauder v. Metro. Transit Auth. of Harris County, Tex., 446 F.3d 574, 583 (5th Cir. 2006) (citation omitted). However, although Elsensohn cites § 2615(a)(2) in support of his appeal, he neither seriously argues that he opposed any practice made unlawful by the FMLA nor seeks to satisfy the criteria for a prima facie case of retaliation under § 2615(b). Instead, he relies on a different, less often discussed section that he mistakenly implies is a mere subset of § 2615(a)(2).

Specifically, Elsensohn relies on § 2615(b), which makes it unlawful for an employer "to discharge or in any other manner discriminate" against an "individual" because that person:

> (1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;
>
> (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or
>
> (3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

§ 2615(b). Elsensohn argues that there "can be no doubt" that he stated a cause of action under § 2615(b)(2)-(3) because: (1) he had given, or was about to give, information in connection with an inquiry into his wife's FMLA case; and (2) but for the fact that Mrs. Elsensohn settled her case, he was about to testify in support of her claims.

Nevertheless, we agree with the district court that Elsensohn did not satisfy the literal criteria set forth in either § 2615(b)(2) or § 2615(b)(3). Section 2615(b)(2) does not apply because Elsensohn did not allege that he ever provided

any information of any kind, formally or informally, in connection with an inquiry or proceeding relating to his wife's claim. Rather, Elsensohn averred that "[a]t all times, [he] attempted to not involve himself in his wife's FMLA claim except to give her moral support." Nor is there even an allegation that Defendants questioned Elsensohn regarding his wife's case.

Similarly, § 2615(b)(3) does not apply because Elsensohn does not allege that he was discriminated against as a result of testimony he gave or was about to give. Elsensohn's allegations undermine his action in this regard. He never testified in any proceeding relating to his wife's claim because his wife's case settled before trial. Too, he was not about to testify in any proceeding relating to his wife's claim when the alleged retaliatory conduct occurred because he averred that his wife's case settled before the allegedly retaliatory actions took place.

As he did below, Elsensohn seeks to avoid the literal confines of the FMLA by arguing that other courts have provided broader protections to an employee based on his or her familial relationship to an employee seeking to oppose an unlawful or discriminatory action under other anti-retaliation statutes. See, e.g., Thompson v. N. Am. Stainless, LP, 520 F.3d 644, 647-48 (6th Cir. 2008) (holding that Title VII protects an employee's spouse from retaliation even though third-party claims are beyond the literal language of the statute); Gonzalez v. N.Y. State Dep't of Corr. Servs. Fishkill Corr. Facility, 122 F. Supp. 2d 335, 346-47 (N.D.N.Y. 2000) (same); E.E.O.C. v. Nalbandian Sales, Inc., 36 F. Supp. 2d 1206, 1213 (E.D. Cal. 1998) (same); Murphy v. Cadillac Rubber & Plastics, Inc., 946 F. Supp. 1108, 1118 (W.D.N.Y. 1996) (same); Mandia v. ARCO Chem. Co., 618 F. Supp. 1248, 1250 (W.D. Pa. 1985) (same).[4]

---

[4] Elsensohn also cites Wu v. Thomas, 863 F.2d 1543, 1549 (11th Cir. 1989), where the Eleventh Circuit held that a husband stated a valid cause of action for retaliation under Title VII based on his wife's protected activities. However, the Eleventh Circuit never addressed

Of course, other courts have refused to broaden the protections of anti-retaliation statutes through judicial interpretation. See Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 568-69 (3d Cir. 2002) (holding that neither the Americans with Disabilities Act nor the ADEA permits a third-party retaliation action even though a literal reading of the statute was at odds with the policies animating the anti-retaliation sections because the preference for plain-meaning interpretations protects the separation of powers and rightly assumes that Congress intends what it says); Smith v. Riceland Foods, Inc., 151 F.3d 813, 819 (8th Cir. 1998) ("We believe that the rule advocated by [the plaintiff]—that a plaintiff bringing a retaliation claim need not have personally engaged in statutorily protected activity if his or her spouse or significant other, who works for the same employer, has done so—is neither supported by the plain language of Title VII nor necessary to protect third parties, such as spouses or significant others, from retaliation." (citation omitted)); Singh, 390 F. Supp. 2d at 1138 (same).

More importantly, we have been unwilling to expand anti-retaliation provisions in another context. In Holt v. JTM Industries, Inc., 89 F.3d 1224, 1226 (5th Cir. 1996), the court held that a plaintiff could not bring a retaliation claim against his employer under the ADEA based merely on his wife's protected activities. The ADEA prohibits an employer from discriminating against an employee "because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]." 29 U.S.C. § 623(d). The court, therefore, recognized that a third party could bring a lawsuit if he has "engaged in the enumerated conduct, even if the conduct was on behalf of another employee's claim of discrimination."

---

whether a husband's mere association with his wife was sufficient to invoke the protections of the anti-retaliation provision. See Singh v. Green Thumb Landscaping, Inc., 390 F. Supp. 2d 1129, 1135 (M.D. Fla. 2005).

9

Holt, 89 F.3d at 1226 (citations omitted). But it also held that "when an individual, spouse or otherwise, has not participated 'in any manner' in conduct that is protected by the ADEA, . . . he does not have automatic standing to sue for retaliation . . . simply because his spouse has engaged in protected activity." Id. at 1227 (emphasis in original). The court recognized that its refusal to expand § 623(d) might expose employees' relatives and friends to retaliation for complaining employees' actions, but it refused to fashion a new rule creating standing for employees who did not participate in any manner whatsoever in a co-worker's charge of discrimination. Id.

In light of Holt and our concern about setting aside the plain meaning of a statute, we decline to provide an interpretation of § 2615(b) divorced from its literal meaning. See Caminetti v. United States, 242 U.S. 470, 485 (1917) ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms." (citations omitted)). While Holt is not binding, the protections afforded under the ADEA are actually greater than the protections afforded under the FMLA because § 623(d) protects an individual who participates in an investigation, proceeding or litigation in any manner, whereas § 2615(b) is limited to specific enumerated activities. We, therefore, see no basis in the statute for providing more protection to the relatives and friends of FMLA complainants than the protections offered to the relatives and friends of ADEA claimants. See Faris, 332 F.3d at 322 ("We know, however, of no good reason . . . why the government would proscribe waiver for FMLA retaliation claims and yet favor waiver of claims for age discrimination under ADEA . . . .").

## IV. CONCLUSION

For the reasons stated above, we AFFIRM the district court's judgment dismissing the case.