# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 8, 2011

No. 09-31101

Lyle W. Cayce
Clerk

JOE LOUIS CHAMPION,

Plaintiff–Appellant,

v.

UNITED STATES OF AMERICA,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:08-CV-1514

Before SMITH, DeMOSS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Joe Louis Champion, federal prisoner #75103-079, filed a pro se tort claim against the United States pursuant to the Federal Tort Claims Act (FTCA).[1] His claims arise from injuries he purportedly sustained when prison guards attempted to quell a disturbance in his unit. The district court dismissed some of his claims, and granted summary judgment for the government on others. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 28 U.S.C. §§ 1346, 2671-2680.

No. 09-31101

**I**

Champion, an inmate at the United States Penitentiary–Pollock, contends that he was injured by prison guards attempting to respond to prison unrest. His account of events is as follows. Champion worked as a prison orderly. Just prior to the nightly lockdown, he was out of his cell attending to his orderly duties when inmates in the tier above his began throwing their foot lockers down to his tier. He and others became locked out of their cells, and the inmates were told to line up in front of their doors so that an officer could enter the unit and open their cells for them. After time passed, guards instead entered the unit to restore order. At least two incendiary devices were thrown in Champion's direction, one of which landed close enough to him to cause burns to his legs.

While the officers were securing the unit, Champion told them that he was injured. They took him to see the nurse. The nurse took notes on his condition and officers photographed his injuries. Later, he made requests to be taken back to the nurse. He estimates that approximately thirteen hours after he had been initially seen, a nurse came to him. The nurse cleaned the burns and provided a painkiller. The next day he was provided a variety of medications, which he identifies as "Neomncin/Poly B/Bacitracin [sic] 15 GM [sic] Oint[ment] and Ibuprofen 600 [mg] [t]ab." The government identifies his medications as an antibiotic and an anesthetic. Though Champion disputes the accuracy of elements of his government medical records, he has not contested the nature of the drugs he received.

When he informed prison authorities that his medication was not alleviating his pain and that his burns were beginning to peel, additional medication was prescribed. Champion identifies that medication as "more Ibuprofen 600 [mg] [t]ab[s] and Silver Sulfadiazine Cream 50 GM 1% GM [sic]." The government identifies this as an antibiotic cream. Champion asserts that his medication was confiscated during a search of his cell on a later date. He

2

No. 09-31101

was given a form to complete to have it replaced. Champion also asserts that his sister-in-law, Julia Webb, sent him a letter telling him "how to keep my burns clean because the nurse didn't tell me how to clean my burns." However, Champion also complained that in one of these initial consultations with the prison nurse "all she did was instruct the Plaintiff to wash his legs with soap and water and go to sick call."

Champion pursued administrative remedies, requesting that he be "compensate[d] for his hurt, pain, and suffering." He complained of the guards' actions leading to his leg burns and his medical care. He pursued these administrative grievances to exhaustion. When filing his complaint in court, he included a retaliation claim, arguing that prison officials retaliated against him for filing his administrative grievances. The district court dismissed his wrongful injury or assault claim under the FTCA on the basis of sovereign immunity and his medical malpractice claim for failure to state a claim. The district court granted summary judgment in favor of the government with respect to the plaintiff's claim for delayed medical care. It also denied Champion's motion for summary judgment. The court dismissed his retaliation claim because he failed to exhaust his administrative remedies with respect to that claim prior to filing suit. Champion now appeals elements of the district court's rulings to this court. Our jurisdiction over this appeal is properly vested pursuant to 28 U.S.C. § 1291.

## II

As an initial matter, Champion has filed with this court a motion for appointment of counsel. That motion is denied.

## III

Champion appeals the district court's dismissal of his FTCA claim for the burns he asserts he suffered as a result of the incendiary devices guards threw near his person. We will interpret Champion's pleadings liberally in light of his

3

No. 09-31101

pro se status.[2] The district court dismissed this claim on the basis of FED. R. CIV. P. 12(b)(1), lack of subject-matter jurisdiction, because of sovereign immunity. Pursuant to FED. R. CIV. P. 59(e), after Champion filed his notice of appeal the district court amended its order to clarify that it had relied upon the so-called "discretionary function exception" to the FTCA.[3]   Champion subsequently corresponded with the district court regarding his planned appeal within the time provided by FED. R. APP. P. 4(a), and contests this dismissal in his brief to this court.  We construe Champion as having appealed the amended judgment.[4]

We review a FED. R. CIV. P. 12(b)(1) dismissal de novo, applying the same standards as the district court.[5]   As the district court did not resolve any disputed facts, we consider the facts as alleged by the plaintiff to be true and ask if dismissal is appropriate.[6]  We have recognized that "'[t]he basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress'"[7] and a plaintiff has "'the burden of showing Congress's unequivocal waiver of sovereign immunity.'"[8]  The FTCA serves as a waiver of sovereign immunity with respect to tort suits actionable under the relevant

---

[2] *Tex. Comptroller of Pub. Accounts v. Liuzza* (*In re Tex. Pig Stands, Inc.*), 610 F.3d 937, 941 n.4 (5th Cir. 2010).

[3] 28 U.S.C. § 2680(a).

[4] *See Mosley v. Cozby*, 813 F.2d 659, 660 (5th Cir. 1987) (per curiam).

[5] *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir.), *cert. denied*, 130 S. Ct. 154 (2009).

[6] *Id.*

[7] *Id.* at 334-35 (quoting *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983)).

[8] *Id.* at 334 (quoting *St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)).

state's law.[9]  However, we "'must strictly construe all waivers of the federal government's sovereign immunity, resolving all ambiguities in favor of the sovereign.'"[10]

In the instant case the district court held that the FTCA did not waive sovereign immunity for Champion's tort claim.  There is a statutory exception to the FTCA's waiver of sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."[11]  The district court held that this exception to the United States' waiver of sovereign immunity rendered the government immune from suit on this claim.

In *United States v. Gaubert*, the Supreme Court developed a two-part test to determine the discretionary function exception's applicability to a claim.[12] First, we consider if the act involves governmental judgment or choice.[13]  If it does, we then consider whether the governmental judgment or choice is of the type that the exception was designed to protect.[14]  The Court identified the purpose of the exception as "prevent[ing] judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, [and] when properly construed, the

---

[9] *Id.* at 335.

[10] *Chapa v. U.S. Dep't of Justice*, 339 F.3d 388, 390 (5th Cir. 2003) (per curiam) (quoting *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998)) (brackets omitted).

[11] 28 U.S.C. § 2680(a).

[12] 499 U.S. 315, 322-23 (1991).

[13] *Id.* at 322.

[14] *Id.* at 322-23.

exception protects only governmental actions and decisions based on considerations of public policy."[15]

Here the *Gaubert* test is satisfied. Taking Champion's factual account to be true, inmates were throwing lockers from the upper tier. Guards sought to quell the unrest. As a result, the guards determined the most effective way to restore order to the prison unit. As we have previously stated, "'[a] prison's internal security is peculiarly a matter normally left to the *discretion* of prison administrators.'"[16] Moreover, we have recognized that discretionary responses to such prison unrest are the type of decisions the exception is designed to protect, as permitting such suits "would place an even greater burden on prison officials during dangerous uprisings and . . . would increase the complexity of what is already 'an extraordinarily difficult undertaking.'"[17]

Construing Champion's pro se brief liberally, he appears to argue, alternatively, that the prison's regulations on inmate unrest granted him a due process liberty interest. He argues that this liberty interest was violated, and that this violation precludes the application of sovereign immunity. His claim fails. Champion has filed a suit against the United States seeking monetary damages. Our recent *en banc* decision in *Castro v. United States* held that the discretionary function exception applied to preclude an FTCA suit[18] and that we "agree[d] with the district court's explanation that the constitutional claims are moot."[19] The district court in *Castro* had held the constitutional claims moot

---

[15] *Id.* at 323 (internal citations and quotation marks omitted).

[16] *Buchanan v. United States*, 915 F.2d 969, 971 (5th Cir. 1990) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981)).

[17] *Id.* at 972 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)).

[18] 608 F.3d 266, 268 (5th Cir. 2010) (en banc) (per curiam), *cert. denied*, 131 S. Ct. 902 (2011).

[19] *Id.*

No. 09-31101

because the ends sought by the injunctive relief requested had been achieved and that court had "already ruled that Plaintiffs cannot seek monetary damages for their constitutional claims, as such claims for monetary relief are barred by the doctrine of sovereign immunity."[20]

We also note that Champion has not asserted a cognizable liberty interest. He argues that the applicable prison regulations were not precisely followed in responding to the unrest. For instance, he argues that the "most not[e] worthy [sic]" regulation is that which directs that "Staff ordinarily shall first attempt to gain the inmate's voluntary cooperation before using force." Of course, that which is to be done "ordinarily" is, by the very terms of the regulation, not universally required. Moreover, Champion must demonstrate more than a mere violation of a prison regulation, since "a violation of prison regulations in itself is not a constitutional violation."[21] We have previously observed the importance of the Supreme Court's decision in *Sandin v. Conner*[22] in this sphere. We have held that "prisoners may no longer peruse state statutes and prison regulations searching for the grail of limited discretion."[23] Subsequently, the Supreme Court has reaffirmed "that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'"[24] More recently, we have cautioned again that "[m]andatory

---

[20] *Castro v. United States*, No. C-06-61, 2007 WL 471095, at \*9 (S.D. Tex. Feb. 9, 2007).

[21] *Edwards v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000).

[22] 515 U.S. 472 (1995).

[23] *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) (citing *Sandin*, 515 U.S. at 484).

[24] *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin*, 515 U.S. at 484).

No. 09-31101

language does not necessarily create a protected liberty interest."[25]   Here, Champion has failed to identify a constitutional liberty interest violated by the guards' conduct.

Champion also argues on appeal that the attempt to quell the prison unrest amounted to cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution.  He did not advance this argument in the proceedings below.  Arguments not made to the district court are waived.[26]

## IV

Champion challenges the district court's dismissal of his claim for medical malpractice with respect to the prison nurse's actions. That claim was dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim.  We review this ruling de novo, and "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor."[27]   Though "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers," we have recognized that such complaints must "plead enough facts to state a claim to relief that is plausible on its face"[28] in light of the Supreme Court's decision in *Ashcroft v. Iqbal*.[29]   "[D]ocuments attached to or

---

[25] *Richardson v. Joslin*, 501 F.3d 415, 419 n.3 (5th Cir. 2007) (citing *Sandin*, 515 U.S. at 483).

[26] *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 257 n.15 (5th Cir. 2008).

[27] *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 371-72 (5th Cir. 2008) (per curiam).

[28] *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010) (internal citations and quotation marks omitted).

[29] —U.S.—, 129 S. Ct. 1937, 1949 (2009).

incorporated in the complaint and matters of which judicial notice may be taken" may be considered in this inquiry.[30]

Liability under the FTCA exists when a claim sounds under existing state law.[31] Louisiana subjects nurses to the same malpractice liability as physicians.[32] In such an action, a plaintiff must prove (1) the degree of knowledge or skill or the degree of care ordinarily exercised by such medical professionals in a similar community and under similar circumstances; (2) that the defendant either lacked this knowledge or skill or failed to use reasonable care and diligence, along with his best judgment; and (3) that the proximate result thereof was injuries to the plaintiff that would not have otherwise been incurred.[33]

Here, even holding Champion to a less stringent pleading standard, he has failed to plead facts sufficient to state a plausible claim for relief. The facts, as pled by Champion, indicate that he met with a nurse multiple times, including immediately after he sustained his injuries when his injuries were documented. He was given multiple medications: antibiotics—which treat the underlying threat of infection—and anesthetics—which serve a palliative function. When the medical staff learned he believed his condition was not improving, he was provided additional medication. He has pled no facts indicating that these actions did not conform to the relevant standard of care. The closest Champion comes to pleading such facts is his invocation of his sister-in-law's letter regarding the manner in which she recommended cleaning his burns.

---

[30] *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

[31] 28 U.S.C. § 1346(b).

[32] *Pommier v. ABC Ins. Co.*, 97-1342 (La. App. 3 Cir. 7/15/98); 715 So. 2d 1270, 1277.

[33] LA. REV. STAT. ANN. § 9:2794(A).

No. 09-31101

Champion, however, has pled no facts to suggest that his sister-in-law possesses any medical expertise. Moreover, elsewhere Champion admits that the nurse directed him to wash his burns with soap and water. Alternatively, Champion has also failed to plead any facts indicating that his medical treatment proximately caused him injuries he would not have otherwise incurred. As Louisiana requires all three statutory elements to be present to grant relief,[34] the district court properly dismissed his claim.

## V

The district court granted summary judgment in favor of the government on Champion's claims asserting his medical care was impermissibly delayed. We review a grant of summary judgment de novo, applying the same standards as the district court.[35] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36]

Liberally construing his medical claims, Champion asserted that he has a constitutional liberty interest in a timely medical exam and a report thereof. Under Champion's recitation of the facts of the case, he was seen twice by a nurse within twenty-four hours of his injury, he received medication for his injuries, and received additional medication when he informed officials that he believed his condition required further medical attention. Moreover, assuming *arguendo*, that such applicable regulations exist and were violated, they would not give rise to a constitutional liberty interest. The Supreme Court has reaffirmed that "that the touchstone of the inquiry into the existence of a

---

[34] *Id.*

[35] *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009), *cert. dismissed*, 130 S. Ct. 3450 (2010).

[36] Fed. R. Civ. P. 56(a).

10

protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'"[37]  For the reasons noted above,[38] Champion's claims fail.

Champion has also asserted that the delay in his medical care constituted deliberate indifference to his serious medical needs, and thus violated the Eighth Amendment to the United States Constitution.  We have held that "[a] prison official acts with deliberate indifference 'only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'"[39]  Here there is no indication that anyone at the prison was aware of such a substantial risk of serious harm to Champion.  Further, by Champion's own factual account he received prompt and repeated medical attention.  In short, his arguments are unavailing.

## VI

The district court also dismissed Champion's retaliation claim because he failed to exhaust his administrative remedies with respect to that claim.  On appeal Champion has offered no argument regarding exhaustion of administrative remedies, and instead has briefed the merits of his retaliation claim.  As we have previously held, a pro se appellant abandons an argument that he does not include in the body of his brief.[40]  Thus Champion has waived his appeal with respect to this issue.

\* \* \*

---

[37] *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

[38] *See supra* at III.

[39] *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (per curiam) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

[40] *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

No. 09-31101

We AFFIRM.