# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 23, 2011

Lyle W. Cayce
Clerk

No. 10-31259

MALONEY GAMING MANAGEMENT, L.L.C.

Plaintiff - Appellant

v.

ST. TAMMANY PARISH,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-CV-1582

Before JONES, Chief Judge, HAYNES, Circuit Judge, and CRONE, District Judge.[*]

MARCIA A. CRONE, District Judge:[**]

Maloney Gaming Management, L.L.C. ("MGM") appeals the district court's order dismissing, with prejudice, its claims brought against St. Tammany Parish, Louisiana (the "Parish"), pursuant to the Fifth and Fourteenth Amendments to the United States Constitution. Specifically, MGM contends that the district court erred in rejecting its assertion that certain commercial lessor and occupational licenses MGM obtained for the purpose of opening two electronic video bingo gaming facilities constitute "property" protected under the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment. MGM also challenges the summary dismissal of its state law cause of action for detrimental reliance, without prejudice, complaining

---

[*]  District Judge of the Eastern District of Texas, sitting by designation.

[**]  Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

that the court failed to articulate the reasons for dismissing the claim. We affirm the district court in all respects.

## I. BACKGROUND

On May 27, 2010, MGM filed suit under 42 U.S.C. § 1983, alleging that it was deprived of property without due process of law and without just compensation in violation of the Fifth and Fourteenth Amendments. In its complaint, MGM averred that, despite obtaining various licenses and certificates and expending significant funds to remodel its facilities located in Covington and Lacombe, Louisiana, for the purpose of providing electronic video bingo, the Parish Council passed Ordinance 12-025.10 (the "Ordinance") on June 4, 2009, making it unlawful for "any person, association, organization, or corporation" to "hold, operate, or conduct" electronic video bingo in the unincorporated areas of the Parish.

MGM also alleged that, prior to passage of the Ordinance, it obtained (for both locations): (1) commercial lessor licenses "to lease the premises to charitable organizations" from the Office of Charitable Gaming; (2) occupational licenses from the Parish Department of Planning; and (3) Certificates of Completion from the Parish Department of Permits and Regulatory. According to MGM, these licenses and permits constitute property within the meaning of the Fifth and Fourteenth Amendments. MGM further claimed that it relied to its detriment on these licenses and permits as well as on a November 2007 legal opinion letter issued by the St. Tammany Council Attorney, which advised that electronic video bingo was permitted within the unincorporated areas of the Parish at that time.

Additionally, MGM complained that the Parish invoked a policy of prohibiting electronic video bingo before passing the Ordinance. MGM contended that, as a consequence, the Parish denied it due process by failing to provide notice and an opportunity to be heard before taking action affecting MGM's "established property interests."

On July 19, 2010, the Parish filed a motion to dismiss MGM's takings and due process claims pursuant to FED. R. CIV. P. 12(b)(6). It attached various documents, which were referenced in MGM's complaint, to the motion. The district court noted in its opinion the following additional facts included in

MGM's response to the Parish's motion to dismiss, but which MGM failed to allege in its complaint:

- That on the planned opening day of [MGM's] facilities, April 15, 2009, all of its video bingo machines had been tested and permitted as required by the Louisiana statutory scheme related to charitable gaming and that [MGM's] license as a commercial lessor had been obtained and properly posted and that, in spite of these facts, the Parish denied [MGM] permission to open its facilities on April 15, 2009, well in advance of the passage of the Ordinance.

- That [the Parish] issued all licenses and permits to [MGM] with full knowledge of [MGM's] intent to operate a video bingo parlor at its two facilities. [MGM] argues that the Parish relied on documents which clearly identified the facilities as bingo parlors in issuing building permits and Certificates of Completion . . . .

- That [the Parish] acted arbitrarily and capriciously in passing the Ordinance. In support of this proposition, [MGM] cites an article from [an online news source] which credits complaints and protests from Parish residents as the motivating factor behind enact[ment] [of] the Ordinance.

- That [MGM] relied on an Opinion Letter issued to [it] on November 16, 2007, by Neil C. Hall, III, the "Council Attorney" for the Parish, which advised [MGM] that video bingo machines may be used in the unincorporated areas of the Parish so long as [MGM] complies with applicable state laws.

On September 9, 2010, the district court granted the Parish's motion pursuant to FED. R. CIV. P. 12(b)(6) and dismissed MGM's takings claim, reasoning that (1) MGM's licenses permitted it to "lease premises to charitable organizations" and to make "commercial, industrial, and institutional business" use of the properties, but did not grant MGM the right to operate electronic video bingo at any of its facilities, and (2) MGM, as a commercial lessor, was not in possession of any property interest for purposes of the Takings Clause because LA. REV. STAT. ANN. § 4:718(F) expressly provides that any license or permit issued pursuant to the Charitable Raffles, Bingo, and Keno Licensing Law (the "Act" or the "Charitable Licensing Law") is "a pure and absolute revocable privilege and not a right, property or otherwise," and "no holder of any license or permit acquires any vested interest or right therein or thereunder." The district court disposed of MGM's due process claim for the same reason—lack of a protected property interest. MGM's detrimental reliance claim was not

No. 10-31259

addressed in the court's opinion but was later dismissed without prejudice in an amended judgment dated December 7, 2009. This appeal followed.

## II. DISCUSSION

### A. FED. R. CIV. P. 12(b)(6)

The Fifth Circuit reviews the decision to grant a Rule 12(b)(6) motion to dismiss *de novo*. *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795-96 (5th Cir. 2011); *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 371 (5th Cir. 2008). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Harold H. Huggins Realty, Inc.*, 634 F.3d at 796 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Elsensohn*, 530 F.3d at 371 (quoting *Iqbal*, 129 S. Ct. at 1965); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 n.10 (5th Cir. 2007) (recognizing that the Fifth Circuit no longer applies the minimal standard of adequate pleading set forth in *Conley v. Gibson*, 355 U.S. 41 (1957)). "A claim for relief is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Harold H. Huggins Realty, Inc.*, 634 F.3d at 796 (quoting *Iqbal*, 129 S. Ct. at 1949). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc.*, 634 F.3d at 796 (quoting *Iqbal*, 129 S. Ct. at 1950).

MGM first challenges the district court's refusal to convert the Parish's motion into one for summary judgment, complaining that the Parish inappropriately referred to "matters outside the pleadings" in its motion to dismiss. In its opinion, however, the district court correctly summarized controlling law on this issue, stating that when considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *See In Re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (finding consideration of insurance contracts unattached to the complaint

permissible where they were attached to the motions to dismiss, referred to in the complaint, and central to the plaintiffs' claims); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice") (citing 5B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, § 1357 (3d ed. 2004 & Supp. 2007)); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

The items attached to the Parish's motion included: (1) the Ordinance; (2) documents dated March 27, 2009, indicating that the Parish's Department of Planning had no objection to MGM receiving occupational licenses with the handwritten annotation "assembly hall" under MGM's name; and (3) two Class "O" Occupational Business Licenses issued to MGM by the Parish Sheriff's Office Occupational License Department.

As noted by the district court, all of these documents were referenced in MGM's complaint. Paragraph ten refers to the Ordinance, and paragraph seven mentions occupational licenses issued on March 27, 2009, by the Parish's Department of Planning. MGM's claims undoubtedly pertain to the Ordinance and the commercial lessor and occupational licenses, as MGM asserts that the Parish deprived it of its licenses without just compensation or due process of law by passing the Ordinance and prohibiting the facilities' openings prior to its passage. Thus, the district court correctly determined that such attachments were central to MGM's claims and, as such, it was permitted to consider them without converting the motion to dismiss into one for summary judgment. *See In Re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

### B.  Takings and Due Process Claims

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, directs that 'private property' shall not 'be taken for public use, without just compensation.'" *Urban Devs. LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006) (quoting U.S. CONST. AMEND. V). "The Fourteenth Amendment provides that no person shall be deprived of life, liberty, or property, without due process of law." *Stokes v. Gann*, 498 F.3d

483, 485 (5th Cir. 2007) (quotations omitted); *see* U.S. CONST. AMEND. XIV, § 1, cl. 3.

To succeed under a takings claim, a plaintiff "must first demonstrate a constitutionally protected property interest." *Severance v. Patterson*, 485 F. Supp. 2d 793, 803 (S.D. Tex. 2007), *aff'd*, 566 F.3d 490 (5th Cir. 2009). Similarly, "[t]o state a Fourteenth Amendment due process claim under § 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)).

MGM contends that the district court erred when it considered state, rather than federal, law in determining whether MGM asserted a protected property interest. Citing *Cleveland v. United States*, 531 U.S. 12, 26 (2000), MGM argues that federal law defines a party's property interests. *Id.* In footnote 4 of the *Cleveland* opinion, the Court stated:

> Notwithstanding the State's declaration that "[a]ny license issued or renewed . . . is not property or a protected interest under the constitutions of either the United States or the state of Louisiana," LA. REV. STAT. ANN. § 27:301(D) (West Supp. 2000), *[t]he question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law . . . .*

531 U.S. at 26 n.4 (emphasis added) (quotations and citations omitted). The Court cited *Drye v. United States*, 528 U.S. 49 (1999), and *United States v. Nat'l Bank of Commerce*, 472 U.S. 713 (1985), in support of its statement that federal law governs whether a state-law right constitutes property. *Cleveland*, 531 U.S. at 26 n.4. Both *Drye* and *Nat'l Bank of Commerce* involved whether the nature of a given state right or interest constituted property subject to a federal tax lien under 26 U.S.C. § 6321, and *Cleveland* addressed whether the State of Louisiana parted with "property" within the meaning of the federal mail fraud statute when it issued a license to operate video poker machines, issues different from those presented in this case. *See Cleveland*, 531 U.S. at 26; *Drye*, 528 U.S. at 58; *Nat'l Bank of Commerce*, 472 U.S. at 727. In any event, the *Drye* court explained:

> We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as "property" or "rights to property" within the compass of

6

the federal tax lien legislation. *Cf. Morgan v. Comm'r*, 309 U.S. 78, 80 (1940) ("State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed.").

*Drye*, 528 U.S. at 58. This explanation is not inconsistent with settled case law directing courts to look to an independent source of law to determine whether property interests exist in the takings and due process contexts. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003-04 (1984) (takings); *United States v. 131.68 Acres of Land*, 695 F.2d 872, 875 (5th Cir. 1983) (takings); *see also Whiting v. Univ. of S. Miss.*, 451 U.S. 339, 346 (2006) (due process).

"The Constitution does not create property interests." *Leis v. Flynt*, 439 U.S. 438, 441 (1979) (citing *Roth*, 408 U.S. at 577); *accord Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). Rather, "the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (quoting *Roth*, 408 U.S. at 577); *Bryan v. City of Madison*, 213 F.3d 267, 275 (5th Cir. 2000). Therefore, "[i]f a property interest exists under state law, then the state cannot appropriate that interest without providing due process and just compensation." *Severance*, 485 F. Supp. 2d at 803.

While a state's pronouncement that a given interest is a privilege and not a right is not necessarily determinative, binding precedent clearly teaches that courts should consider state law in determining whether a property interest exists. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Hudson v. Tex. Racing Comm'n*, 455 F.3d 597, 599 n.4 (5th Cir. 2006); *see also Phillips*, 524 U.S. at 164; *Bryan*, 213 F.3d at 275. As such, the district court did not err when it considered LA. REV. STAT. ANN. § 4:718(F), which states that a license or permit issued pursuant to the Charitable Licensing Law is "a pure and absolute revocable privilege and not a right, property or otherwise," and "no holder of any license or permit acquires any vested interest or right therein or thereunder."

A reading of the complaint reveals that MGM asserts a property interest in its commercial lessor and occupational licenses. Although a license "may well be 'property' once issued, insofar as the [licensee] is concerned," *Cleveland*, 531 U.S. at 20 n.3 and *Bell v. Burson*, 402 U.S. 535, 539 (1971), where the alleged property interest does not authorize the licensee to engage in the proposed

activity, a protected property interest will generally not exist. *See, e.g.*, *Shaboon v. Duncan*, 252 F.3d 722, 731 (5th Cir. 2001) (reasoning that plaintiff did not have a property interest in medical clinical privileges because she did not hold a medical license; rather, she held an institutional permit authorizing her to work as an unlicensed doctor contingent on her participation in a residency program); *M & J Coal Co. v. United States*, 47 F.3d 1148, 1153 (Fed. Cir. 1995) (rejecting plaintiff's takings claim where an "inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with").

In this instance, the licenses held by MGM authorized it "to lease the premises to charitable organizations" and to engage in commercial, industrial, and institutional businesses. They did not authorize MGM to conduct electronic video bingo. In fact, LA. REV. STAT. ANN. § 4:727(E)(2)(b) expressly provides that "[n]o person licensed as a commercial lessor . . . shall . . . [h]old, operate, conduct, or assist in the holding, operating, or conducting of a charitable game of chance at the commercial premises." Under these circumstances, therefore, MGM never possessed the requisite stick in the proverbial bundle of property rights that would allow it to conduct electronic video bingo. *See Minneapolis Taxi Owners Coalition, Inc. v. City of Minneapolis*, 572 F.3d 502, 509 (8th Cir. 2009), *cert. denied*, 130 S. Ct. 1570 (2010) ("Even if there is a property interest in a particular license, a takings claim cannot be supported by asserting ownership in a property interest that is different and more expansive than the one actually possessed.").

In addition to asserting a property interest in its commercial lessor and occupational licenses, MGM also contends that the Parish "impeded the issuance of certain licenses thereby impacting MGM's role as a recognized statutory lessor" and that "the Parish arbitrarily prohibited the planned opening by arbitrarily refusing to release Parish charitable licenses to state approved charities." These statements suggest that MGM is attempting to assert a property interest in local Parish permits or licenses that were *not issued* to third-party charities.

In *JDC Mgmt., LLC v. Reich*, the district court rejected a plaintiff company's assertion that it had a cognizable liberty or property interest for due process purposes in two charities' applications for charitable gaming licenses.

644 F. Supp. 2d 905, 944-45 (W.D. Mich. 2009). The court stated that the charities themselves "had no constitutionally cognizable property interest in a license that they did not hold; *a fortiori*, [the plaintiff company] could have no constitutionally cognizable property interest in those third parties' would-be licenses (less still a property interest in any profit they expected or hoped to earn doing business with the licensees after their approval)." *Id.* at 944. MGM's assertion that it held a constitutionally protected property interest in local permits unissued to the lessee charities, therefore, is without merit. *Cf. Am. Int'l Gaming Ass'n, Inc. v. La. Riverboat Gaming Comm'n*, 00-2864, p. 14 (La. App. 1 Cir. 9/11/02), 838 So. 2d 5, 16 ("[Louisiana] state law affords a license applicant no individual entitlement to a license that he seeks . . ., [and] we find no due process violation because neither [applicant] had a protected property interest in the benefits conferred by a license that they did not actually hold.").

MGM's takings claim fails in any event because it did not allege a complete deprivation of the economically viable use of its property. *See Agins v. City of Tiburon*, 447 U.S. 255, 160 (1980) (stating that a "land use regulation does not effect a taking if it . . . does not deny an owner economically viable use of his land");[1] *see also First Eng. Evangelical Church of Glendale v. Los Angeles Cnty.*, 482 U.S. 304, 313, 318, 321 (1987); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1428 (9th Cir. 1996).

MGM alleged the following: (1) it expended "significant funds" to remodel its facilities into two video bingo parlors; (2) it was prevented from operating these facilities by passage of the Ordinance, resulting in the loss of past, present, and future income; (3) it was prevented from opening the facilities "under threat of citation" before the Ordinance was passed and, therefore, deprived of the revenue that could have been earned in April and May 2009; and (4) the Parish "arbitrarily and unreasonably" "revoked authorized licenses and permits without just compensation." Although these factual averments address the economic loss purportedly sustained by MGM, they do not allege that MGM was deprived of all or even most of the economically viable use of its property. *See Matagorda Cnty. v. Russell Law*, 19 F.3d 215, 223 (5th Cir. 1994) ("In order for a regulatory

---

[1] The *Agins* standard also required consideration of whether the government regulation "substantially advanced" legitimate state interests. 477 U.S. at 260. This requirement, however, was abrogated by the Supreme Court in *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 548 (2005).

taking to rise to the level of an unconstitutional taking, there must be a complete deprivation of the owner's economically viable use of his property."). This court has affirmed the dismissal of a takings claim where the plaintiff fails to assert in its complaint that the property would lose all economically viable use as a result of a city ordinance. *See Adolph v. Fed. Emergency Mgmt. Agency*, 854 F.2d 732, 740 (5th Cir. 1988); *see also Van Way v. City-Parish Council of La.*, 67 F. App'x 251, 251 (5th Cir. 2003) (per curiam); *Sakla v. City of New Orleans*, 216 F.3d 1079, 1079 (5th Cir. 2000) (per curiam). In this instance, it is apparent that MGM did not lose all economically viable use of its property, as it was not prohibited from leasing its premises to organizations that could conduct lawful forms of charitable gaming, such as regular bingo or keno, or for any other commercial purpose. *See* LA. REV. STAT. §§ 4:701-740 (contemplating the allowance of other forms of charitable gaming, including charitable raffles and keno).

## C.  Detrimental Reliance

MGM's detrimental reliance claim is now moot, having been litigated through the state courts to final judgment and appeal to the highest state court. *See Maloney Gaming Management, LLC v. Parish of St. Tammany*, 2011-CC-1319, p.1 (La. 9/30/11); ___ So.3d ___, ___, 2011 WL 4790932.

## III.  CONCLUSION

Consistent with the foregoing analysis, the district court did not err when it dismissed MGM's takings and due process claims. MGM failed to allege a constitutionally protected property interest and was not deprived of all economically beneficial use of its property. Further, the detrimental reliance claim is moot in light of the Louisiana Supreme Court's denial of MGM's writ application. The judgment of the district court, therefore, is AFFIRMED.